UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 21 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| SUBMERSIBLE SYSTEMS, INC. § | |
| § | |
| VS § | C.A. NO. B-03-020 |
| § | |
| PERFORADORA CENTRAL, S.A. de C.V. § | RULE 9(h) ADMIRALTY |

## PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT

**TO THE HONORABLE JUDGES OF SAID COURT:**

SUBMERSIBLE SYSTEMS, INC. (hereinafter "Submersible"), plaintiff herein, files this Original Verified Complaint and would show as follows:

1. Submersible is now and has been at all pertinent times a corporation organized and existing under the laws of the State of Louisiana, with its principal place of business in Patterson, Louisiana.

2. Upon information and belief, Defendant, PERFORADORA CENTRAL, S.A. de C.V. (hereinafter "Perforadora"), is now and has been at all pertinent times a corporation operating and existing under the laws of the Republic of Mexico and with its principal place of business in Mexico. Perforadora is not licensed to do business in the State of Texas, has not appointed an agent for service of process within the State of Texas and is not "found" within this district for purposes of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

3. This is a case of admiralty and maritime jurisdiction, as will more fully appear, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has jurisdiction over this controversy by virtue of Rule B and 28 U.S. Code § 1333.

4.  Venue is proper in this District as property belonging to Perforadora is located within the Southern District of Texas

5.  Upon information and belief, Perforadora cannot be "found" within this district within the terms of Supplemental Rule B and in accord with the requirements of federal due process; but there are now or will be during the pendency of this action certain property, goods, chattels, credits, effects, accounts and/or funds held in escrow, belonging to, for the benefit of, or claimed by Perforadora within this District including, without limitation, certain property, goods, chattels, credits, dividends, effects, accounts and/or funds held in escrow or otherwise by or on behalf of Perforadora in the possession, custody or control of various third parties in this District, including a rig which is being constructed and in which Perforadora has substantial equity.

6.  Submersible avers that certain property, goods, chattels, credits, dividends, effects, accounts and/or funds held in escrow or otherwise belonging to, for the benefit of or claimed by Perforadora are or are expected to be within the jurisdiction of this Honorable Court but may leave this jurisdiction before judgment can be obtained against Perforadora and executed against its property. Accordingly, the property should be attached and garnished pursuant to Rule B.

7.  On November 6, 1996, Submersible entered into a contract for underwater surveying services with Quantum Ingenieros, S.A. de C.V. (hereinafter "Quantum"), which, upon information and belief, is now and has been at all pertinent times a corporation existing under the laws of the Republic of Mexico.

8.  Prior to commencement of the contract entered between Quantum and Submersible, Submersible purchased new equipment and leased other equipment that was transported from, among other places, Como, Italy to Submersible's place of business in Patterson, Louisiana.

9. Quantum contracted for services with Submersible as part of a larger contract for oil-field related services between Quantum and Petroleos Mexicanos a/k/a Pemex (hereinafter "Pemex") in connection with a Pemex project in Mexico.

10. Quantum also contracted with Perforadora, which is in the business of providing supply boats, in connection with the services Quantum was to provide Pemex, including *inter alia* the transportation of Submersible's equipment and personnel from Morgan City, Louisiana.

11. On or about November 5, 1996, Perforadora dispatched its supply boat, the DON FRANCISCO, to Morgan City, Louisiana to transport Submersible's men and equipment to Ciudad Del Carmen, State of Campeche, Mexico, where the work by Submersible was to be performed.

12. After arriving in Mexico, Submersible commenced performing surveying services in accordance with its contract with Quantum.

13. After Submersible's surveying services for Quantum were underway, Quantum failed to compensate Submersible in accordance with the terms of the contract.

14. Although Quantum failed to compensate Submersible for its services, Submersible completed the work under the contract based upon guarantees from Quantum and its principals that payment would be forthcoming.

15. At the time Submersible completed the contract with Quantum, Submersible was owed in excess of $750,000.00 by Quantum which has never been paid.

16. Upon information and belief, Quantum also failed to compensate Perforadora in connection with its services.

17. On or about June 22, 1996, Perforadora seized Submersible's equipment without judicial process while the equipment was aboard the DON FRANCISCO at the port in Dos Bocas, Mexico, ostensibly as security for or in retaliation against Quantum for arrearages owed by Quantum to Perforadora.

18. The seizure of Submersible's equipment by Perforadora was accomplished extra-judicially and without Mexican authority, as a unilateral, unlawful, extra-judicial act of conversion by Perforadora.

19. After the seizure of Submersible's equipment in Dos Bocas, Mexico, Perforadora moved and locked Submersible's equipment at Perforadora's facility in Del Carmen, Mexico.

20. In seizing Submersible's equipment, Perforadora tried to pressure Quantum, and/or pressure Submersible to pressure Quantum into paying Perforadora for its services even though the equipment did not belong to Quantum.

21. Following the seizure, Submersible contacted Perforadora on numerous occasions to advise that its equipment had been wrongfully seized by Perforadora, because it was Quantum, rather than Submersible, that owed Perforadora for the services Perforadora performed.

22. In addition to contacting Perforadora on numerous occasions, Submersible has also met with representatives of Perforadora, including among others Fausto Correra, one of Perforadora's managers; however, these meetings have been to no avail.

23. Perforadora was aware at all times that the equipment it seized was owned by Submersible not Quantum, and that it was Quantum, rather than Submersible, that owed arrearages to Perforadora under the contract between Quantum and Perforadora. Quantum also confirmed to Perforadora that the equipment belonged to Submersible. Perforadora nevertheless refused to release

Submersible's equipment.

24.     Submersible's efforts to obtain the release of its equipment through United States officials proved futile due to Perforadora's unwillingness to cooperate with the United States officials who investigated the matter.

25.     Submersible's efforts to obtain the release of its equipment through Mexican authorities proved equally futile.

26.     Since the seizure of Submersible's equipment by Perforadora, the equipment was unnecessarily exposed to the elements, including salt water, and heat from the sun, which caused the condition of Submersible's equipment to deteriorate substantially.

27.     Prior to the seizure, the equipment was worth approximately $300,000.00.

28.     Due to the seizure of its equipment by Perforadora, Submersible has turned down other work that it could have performed if it had access to its equipment, resulting in substantial losses by plaintiff.

29.     Submersible's business operation withered and was forced to shrink its business due to Perforadora's wrongful seizure of its essential equipment.

30.     Submersible is a small company which at the time of the seizure of its equipment by Perforadora had approximately nine (9) permanent employees.

31.     Due to the seizure of Submersible's equipment by Perforadora, Submersible had to scale down to two (2) employees and was essentially dormant as a result of the illegal seizure. Plaintiff sustained substantial losses of revenue as a result of defendant's actions, estimated to exceed $2.3 million.

32. Perforadora refused to return the equipment and to assist Submersible in its return/retrieval until the U.S. Magistrate Judge for the Southern District of Mississippi ultimately ordered Perforadora to cooperate with Submersible to obtain the release of said property to Submersible.

33. When the equipment was returned to the United States shortly after March 1, 1999, the equipment was a total loss due to Perforadora's failure to maintain and protect it during the seizure.

34. By reason of Perforadora's wrongful seizure of Submersible's equipment, Submersible is entitled to damages, both actual and consequential, plus interest, costs, expenses and attorney's fees.

35. Perforadora's actions constitute a gross outrage and were malicious and taken in willful and wanton disregard of Submersible's rights.

36. Accordingly, in addition to compensatory and consequential damages, Submersible is entitled to recover punitive damages from Perforadora under admiralty law.

37. As is indicated in the memorandum in support of motion for an order authorizing the issuance of maritime attachment and garnishment filed contemporaneously with this complaint, this matter was previously tried to a final judgment in Submersible's favor in the U.S. District Court for the Southern District of Mississippi. On appeal by Perforadora, however, the judgment was vacated and the case remanded with instructions to dismiss the case for lack of personal jurisdiction.

38. On rehearing, the Fifth Circuit panel affirmed its earlier decision holding that the district court was without personal jurisdiction over Perforadora and that the district court had no power to attach Perforadora's property (incidentally, a rig which was under construction in the

Southern District of Mississippi) because the property had left the Southern District of Mississippi.

39. Notwithstanding the foregoing, Submersible believes that various property, goods, chattels, credits, dividends, effects, accounts and/or funds held in escrow or otherwise by or on behalf of Perforadora is within the jurisdiction of this Court, which allows this Court to exercise jurisdiction over Perforadora as authorized by Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims.

**WHEREFORE, PREMISES CONSIDERED**, plaintiff, Submersible Systems, Inc., prays that Defendant, PERFORADORA CENTRAL, S.A. DE C.V., be cited to appear and answer herein and after trial of the merits of this cause, Submersible have judgment against Perforadora, for the following:

a. That if Perforadora cannot be found within this District, then all of its property or the property of any of its related entities, within this District be attached in the sum of $6,000,000.00 as security for this maritime claim against a non-resident defendant, as authorized by Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims;

b. That an order be entered enjoining Perforadora and any of its related entities, from directly or indirectly selling, transferring, incumbering, moving or otherwise concealing funds or other assets of any nature whatsoever, including without limitation, certain property, goods, chattels, credits, dividends, effects, accounts and/or funds held in escrow or otherwise, by or on behalf of Perforadora, no matter where located, in which Perforadora or any of its related entities has any legal or beneficial interest, whether directly or through any other person or entities;

 c. That an order be entered requiring Perforadora to submit to plaintiff a sworn statement or accounting fully identifying in detail all assets within the State of Texas as set forth in the preceding paragraph and the location and custodian thereof;

 d. That judgment be entered against Perforadora in favor of the plaintiff for all sums for which plaintiff may be entitled, together with attorney's fees, pre-judgment and post-judgment interest and costs; and

 e. That this Court grant the plaintiff such other and further relief as may be just and proper.

Respectfully submitted,

_____
MICHAEL H. BAGOT, JR.,
Attorney - In - Charge
Tex. Bar No. 1512520 (S.D. Tex. No. 13474)
THOMAS A. RAYER, JR.
La. Bar. No. 20581
**WAGNER & BAGOT, L.L.P.**
Poydras Center, Suite 2660
650 Poydras Street
New Orleans, Louisiana 70130-6105
Telephone: (504) 525-2141

_____
ARTHUR L. SCHECTER
Tex. Bar No. 17735000 (S.D. Tex. No. 1454)
MATTHEW D. SHAFFER
Tex. Bar No. 18085600 (S.D. Tex No. 8877)
DENNIS M. MCELWEE
Tex. Bar No. 13587820 (S.D. Tex. No.7490 )
**SCHECHTER, MCELWEE & SHAFFER, L.L.P.**
3200 Travis
Houston, Texas 77006
Telephone: (713) 524-3500

Attorneys for Submersible Systems, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | |
|---|---|
| SUBMERSIBLE SYSTEMS, INC. § | |
| § | |
| VS § | C.A. NO. B-03-020 |
| § | |
| PERFORADORA CENTRAL, S.A. de C.V. § | RULE 9(h) ADMIRALTY |
| § | |
| STATE OF LOUISIANA § | |
| § | |
| PARISH OF ORLEANS § | |

## VERIFICATION

**BEFORE ME**, the undersigned authority, a Notary Public in and for the parish and state aforesaid, personally came and appeared:

**WOLFGANG BURNSIDE,**

who, after being duly sworn, did depose and state that:

> I am the President of Submersible Systems, Inc., the plaintiff in this suit; I have read the foregoing Verified Complaint and know the contents thereof; to the best of my knowledge and belief, the contents of the Verified Complaint are true and correct; and I am aware that this Verified Complaint will be filed in the United States District Court for the Southern District of Texas.

Further Affiant saith not.

_____
WOLFGANG BURNSIDE

Sworn To and Subscribed Before Me, this 31 day of December, 2002.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF LOUISIANA

718-01/54359

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SUBMERSIBLE SYSTEMS, INC. | § § § | |
| VS | § § | C.A. NO. **B-03 v 020** |
| PERFORADORA CENTRAL, S.A. de C.V. | § | RULE 9(h) ADMIRALTY |
| STATE OF LOUISIANA | § § | |
| PARISH OF ORLEANS | § | |

## VERIFICATION

**BEFORE ME,** the undersigned authority, a Notary Public in and for the parish and state aforesaid, personally came and appeared, **MICHAEL H. BAGOT, JR.,** who, upon being duly sworn, did depose and state that:

> I am an attorney with the firm of Wagner and Bagot, L.L.P., representing plaintiff, Submersible Systems, Inc. in this case. I have personally inquired into the presence of defendant, Perforadora Central, S.A. de C.V., in this district. I have been advised by the office of the Secretary of State of the State of Texas that defendant is not incorporated pursuant to the laws of Texas, is not qualified to conduct business within the State Texas, and has no nominated agents for service of process within the State of Texas. I have inquired of Directory Assistance to determine whether defendant can be located in this district. I have been advised that defendant does not have any telephone listing in the State of Texas.
>
> I am informed that Perforadora is building a rig in Brownsville, Texas, but based on the Fifth Circuit's ruling in Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V., 249 F.3d 413, 419 (5th Cir. 2001), believe those contacts are not sufficient to establish personal jurisdiction against Perforadora.

I have formed a good faith belief that defendant does not have sufficient contacts or business activities within this district to defeat maritime attachment under Rule B. It is my belief, based upon this investigation, that defendant cannot be found within this district for the purposes of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedures.

Further Affiant saith not.

_____
Michael H. Bagot, Jr.

Sworn To and Subscribed Before Me, this _____ day of January, 2003.


_____
NOTARY PUBLIC IN AND FOR
THE STATE OF LOUISIANA

55450