United States District Court
Southern District of Texas
FILED

APR 0 4 2003

Michael N. Milby
Clerk of Court

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **SUBMERSIBLE SYSTEMS, INC.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. B-03-020** |
| | * | |
| **PERFORADORA CENTRAL, S.A. de C.V.** | * | **RULE 9(h) ADMIRALTY** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS FOR FORUM NON CONVENIENS

ROYSTON RAYZOR VICKERY & WILLIAMS L.L.P.
Keith Uhles (#          )
55 Cove Circle
Brownsville, TX 78523-3509
Telephone:  (956) 542-4377
Facsimile:  (956) 542-4370

MILLING BENSON WOODWARD L.L.P.
James K. Irvin (#7166)
Benjamin O. Schupp (#21074)
Sergio J. Alarcon (#24740)
909 Poydras Street, Suite 2300
New Orleans, LA  70112-1010
Telephone:  (504) 569-7000
Facsimile:   (504) 569-7001

Attorneys for Perforadora Central S.A. de C.V.

## TABLE OF CONTENTS

**PAGE**

I.     STATEMENT OF THE NATURE OF THE PROCEEDINGS ..................... 1

II     STATEMENT OF FACTS ............................................... 2

III.   STATEMENT OF THE ISSUES TO BE RULED UPON ........................ 4

IV.    SUMMARY OF THE ARGUMENT ....................................... 5

V.     ARGUMENT ....................................................... 5

      A.     All of the Elements Needed for Dismissal for *Forum Non Conveniens* are Present in this Case ............................... 5

            1.     An Alternative Forum is Both Available and Adequate ................................................ 6

                (a) Availability ............................................. 6

                (b) Adequacy ..................................... 7

            2.     The Private Interest Factors Weigh Heavily In Favor of Dismissal ....................................... 13

                (a) Ease of Access to Sources of Proof -- Location of Witnesses, Documents and Operative Events .................. 13

                (b) Availability of Compulsory Process ........................ 14

                (c) The Possibility of View of Premises ....................... 15

                (d) Practical Problems That Make Trial Easy, Expeditious and Inexpensive ............................. 15

            3.     The Public Interest Factors Require Dismissal ................... 17

                (a) Administrative Difficulties Flowing from Court Congestion ....................................... 17

(b) The Interest in Having Localized Controversies
Resolved at Home . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

(c) Familiarity of the Forum with the Governing Law . . . . . . . . . . . . . 19

(1) The Place of the Wrongful Act . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

(2) The Law of the Flag . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

(3) Allegiance or Domicile of the Injured Party . . . . . . . . . . . . . . . . 20

(4) Allegiance of the Shipowner . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

(5) Place of Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

(6) Accessibility of a Foreign Forum . . . . . . . . . . . . . . . . . . . . . . . . . 20

(7) Law of the Forum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

(8) Shipowner's Base Operations . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

(d) The Unfairness of Burdening
Courts of Texas with a Foreign Dispute . . . . . . . . . . . . . . . . . . . . . . 22

(e) Respect for Co-Equal Sovereigns . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

B.    This Plaintiff's Choice of Forum is Entitled
to Little Deference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

C.    Judge Gex was Misled in His Denial of the Perforadora's
Earlier *Forum Non Conveniens* Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

D.    Perforadora Will Waive its Defenses of Limitations and Laches
to Permit the Litigation of SSI's Claims in the Courts of Mexico . . . . . . . . . . 27

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## TABLE OF AUTHORITIES

**PAGE**

*Atomic Capital Investments v. KLM Royal Dutch Airlines,*
1998 U.S. Dist. LEXIS 2343 (S.D.N.Y. Mar. 3, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824
(5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13, 16, 17

*Blanco v. Banco Industrial de Venezuela,* 997 F.2d 974
(2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 22

*Demelo v. Lederle Labs,* 801 F.2d 1058 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Dunham v. Hotelera Canco S.A. de C.V.,* 933 F. Supp. 543 (E.D.Va. 1996) . . . . . . 14, 17, 18, 19

*Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-*
*Unterweser,* 955 F.2d 368 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gonzales v. Chrysler Corporation,* 301 F.3d 377 (5th Cir. 2002) . . . . . . . . . . . . . . . 2, 10, 12, 26

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839 (1947) . . . . . . . . . . . . . . . . . 13, 17, 22, 24

*Gutierrez v. Collins,* 583 S.W. 2d 312 (Tex. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hellenic Lines v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970) . . . . . . . . . . . 19

*In Re Air Crash Disaster Near New Orleans, Louisiana,* 821 F.2d
1147 (5th Cir. 1987), *vacated and remanded on other grounds,*
109 S.Ct. 1928 (1989), *modified,* 883 F.2d 17 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 5, 6, 17

*Laker Airways v. Pan American World Airways,* 731 F.2d 909 (D.C. Cir. 1984) . . . . . . . . . . . 22

*Lan Associates v. Bank of Nova Scottia,* 1997 U.S. Distr. LEXIS
11931 (S.D.N.Y. Aug. 11, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 1921, 97 L.Ed. 1254 (1953) . . . . . . . . . . . 19, 20, 22

*Mediterranean Gulf, Inc. v. Hirsch,* 783 F. Supp. 835 (D.N.J. 1991) . . . . . . . . . . . . . . . . . . . . 24

*Mercier v. Sheraton International, Inc.,* 981 F.2d 1345
(1st Cir. 1992), *cert. denied,* 508 U.S. 912 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

iv

*Mercier v. Sheraton International, Inc.*, 935 F.2d 419 (1ˢᵗ Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 23

*Murray v. British Broadcasting Corp.*, 81 F.3d 287 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 13

*Neosac, Ltd. v. Vinmar Impex, Inc.*, 810 F. Supp. 829 (S.D.Tex. 1993) . . . . . . . . . . . . . . . . . . . 12

*Onaway Transportation Co. v. Offshore Tugs, Inc.*, 695 F.2d 197 (5ᵗʰ Cir. 1983) . . . . . . . . . . . 14

*Pain v. United Technologies Corp.*, 632 F.2d 1027 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 18

*Perez and Compania (Cataluna), S.A. v. M/V Mexico 1*, 826 F.2d 1449 (5ᵗʰ Cir. 1987) . . . . . . . 14

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 265 (1981) . . . . . . . . . . . 6, 7, 18, 22, 23, 24

*Quintero v. Klaveness Ship Lines*, 914 F.2d 717 (5ᵗʰ Cir. 1990) . . . . . . . . . . . . 6, 7, 13, 16, 19, 21

*Reinhardt v. Key Risk Management, Inc.*, 2003 W.L. 292176
(N.D. Tex. February 6, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Republic of the Philippines v. Westinghouse Electric Co.*, 43 F.3d 65 (3d Cir. 1995) . . . . . . . . 22

*Scottish Air International, Inc. v. British Caladonia Group, PLC*,
81 F.3d 1224 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Seguros Comercial Americas, S.A. de C.V. American President
Lines, Ltd.*, 933 F. Supp. 1301 (S.D.Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 17, 27

*Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V.*,
249 F.3d 413 (5ᵗʰ Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Sussnam v. Bank of Israel*, 801 F.Supp. 1068 (S.D.N.Y. 1992),
aff'd., 990 F.2d 71 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Urena Taylor v. Daimler-Chrysler Corporation*, 196 F. Supp. 2d 428
(E.D.Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

## OTHER AUTHORITIES

*Moore's Federal Practice*, Section 111.74[2][f] and Section 111.75[1] . . . . . . . . . . . . . . . . . 6, 23

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **SUBMERSIBLE SYSTEMS, INC.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. B-03-020** |
| | * | |
| **PERFORADORA CENTRAL, S.A. de C.V.** | * | **RULE 9(h) ADMIRALTY** |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

### MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS FOR FORUM NON CONVENIENS

Perforadora Central S.A. de C.V. ("Perforadora") files this memorandum in support of its motions to dismiss the complaint of Submersible Systems, Inc. ("SSI") for *forum non conveniens*.

### I.

### STATEMENT OF THE NATURE OF THE PROCEEDINGS

SSI seeks damages from Perforadora for the alleged conversion of SSI's property in Dos Bocas, Mexico. SSI filed an identical suit against Perforadora in the United States District Court for the Southern District of Mississippi. Following a judgment in favor of SSI, that suit was ordered to be dismissed by the United States Court of Appeals for the Fifth Circuit for lack of personal jurisdiction. *Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413 (5th Cir. 2001).

Perforadora is incorporated under the laws of Mexico and has its principal corporate office in Mexico City, D.F., Mexico. Perforadora has a shore base in Ciudad del Carmen in the State of Campeche in Mexico, from which it operates vessels and drilling rigs in Mexican waters.

Since March, 2002, Perforadora has had a small office in the Amfels, Inc. shipyard in Brownsville, Texas, where several Perforadora employees are overseeing the construction of a

drilling rig. Perforadora has no other offices or employees in the U.S. and owns no real property in the U.S. The Fifth Circuit characterized Perforadora's contacts with the U.S. as "at best, sporadic and of small consequence." 249 F.3d at 421. Neither Perforadora's office in the Amfels shipyard nor the rig under construction had anything to do with the activities that led to SSI's complaint.

SSI's complaint is entirely about events that occurred in Mexico. As this Court is aware, SSI sued Perforadora here by virtue of a Supplemental Admiralty Rule B attachment of Perforadora's drilling rig at Amfels's shipyard. Perforadora has answered the complaint, denying SSI's allegations and affirmatively asserting, among others, the defense of *forum non conveniens*.

In the earlier lawsuit that SSI filed in the Southern District of Mississippi, Judge Gex denied a *forum non conveniens* motion similar to this one. As will be shown below, Judge Gex's ruling was erroneous and resulted from the fact that he was misled about the existence of a civil remedy for conversion under the law of Mexico. Additionally, Judge Gex did not have the benefit of the Fifth Circuit's later decision in *Gonzales v. Chrysler Corp.*, 301 F.3d 377 (5th Cir. 2002), which held this Court to be an inconvenient forum for a tort claim that arose entirely in Mexico. *Gonzalez* is discussed in greater detail below.

## II.

### STATEMENT OF FACTS

Most of the following facts are taken from SSI's complaint. In November of 1996, SSI entered into a contract with Quantum Ingenieros, S.A. de C.V. ("Quantum"), a Mexican corporation. The contract provided that SSI would perform underwater inspection services for Quantum in Mexican waters (Compl. ¶ 7). Quantum had chartered Perforadora's supply boat, the M/V DON FRANCISCO, and arranged to have the vessel load SSI's inspection equipment in Morgan City, Louisiana, and transport it to Ciudad del Carmen, in Campeche, Mexico, where SSI would perform

2

its services (Compl. ¶ 11). Quantum fell behind in its payments to both SSI and Perforadora for the services that had been provided by them to Quantum (Compl. ¶¶ 15-16).

At the conclusion of SSI's work, the DON FRANCISCO transported SSI's personnel and equipment to the port of Dos Bocas, Mexico. There, according to SSI, Perforadora "seized" SSI's equipment aboard the DON FRANCISCO (Compl. ¶ 18). The equipment was moved ashore (Compl. ¶ 19), and SSI's efforts in Mexico to recover the property through "United States officials" and "Mexican authorities" were unsuccessful (Compl. ¶¶ 24-25).

Perforadora will show that, under the terms of its charter with Quantum, the DON FRANCISCO was to be redelivered free and clear of any cargo at the end of the charter, so when the vessel docked at Dos Bocas with Quantum's, SSI's and other entities' equipment still aboard, all of that equipment, including SSI's, was off-loaded by Perforadora to a warehouse owned by Petroleos Mexicanos ("Pemex"), the Mexican state-owned oil company. The DON FRANCISCO was then able to embark upon a new job.

A few days later, Pemex instructed Perforadora to remove the materials that had been off-loaded from the DON FRANCISCO, and in early July Perforadora moved them to its warehouse in Ciudad del Carmen.

Because Quantum had failed to offload the vessel and had failed to pay charter hire, other than by the issuance of bad checks, Perforadora on advice of its local counsel, filed a criminal complaint against Quantum and its principals. Not knowing what interests Quantum and SSI had in the equipment other than that both were listed on importation permits and having been instructed by Quantum to hold the equipment as security until Quantum paid its debt, Perforadora followed its attorney's advice to tender the equipment to the Agente Del Ministerio Publico Del Fuero Comun

3

Adscrito a La Primera Delegacion ("Ministerio Publico") in Cuidad del Carmen as part of the criminal investigation of Quantum. The Ministerio Publico took legal possession of the equipment and directed that it be held by Perforadora in its warehouse. At a later hearing, SSI was unable to obtain release of its equipment from the Ministerio Publico, and none of the equipment, including SSI's, was released until November 1998, after the criminal investigation and proceedings against Quantum ended. SSI waited several more months to retrieve its equipment from the Ministerio Publico, by which time the condition of the equipment had deteriorated.

SSI's and Perforadora's respective versions of the foregoing events are very much in dispute. In response to this motion, as it has at every previous opportunity, SSI will undoubtedly offer an inflammatory version of the facts, most of which will be irrelevant to the *forum non conveniens* analysis. But one thing cannot be disputed: that all of the operative events occurred in Mexico.

### III.

### STATEMENT OF THE ISSUES TO BE RULED UPON

Plaintiff alleges the tort of conversion based upon events that occurred wholly within the territory or territorial waters of Mexico. Mexican courts recognize a civil action in tort for conversion. The plaintiff is a Louisiana corporation owned by a citizen of the United Kingdom, and nothing about its case has any relationship to Texas. Much of the testimony and documents to be presented to the Court are or will be in Spanish. Mexican law governs. Plaintiff can point to no real convenience in litigating its case here. Should a federal court sitting in Texas dismiss such a case on grounds of *forum non conveniens* so that the litigation can proceed in Mexico?

4

## IV.

## SUMMARY OF THE ARGUMENT

With the exception of plaintiff's citizenship, which has nothing to do with Texas, all of the contacts and interests involved in this suit have been centered in Mexico. The alleged conversion, no matter which party's version is accepted, occurred entirely within the state of Mexico. Mexican courts provide an available and adequate forum, according to federal courts sitting in this state and elsewhere. The Mexican forum is available and adequate in this case because Mexican courts recognize a civil action for conversion. Moreover, an analyses of all the private interest factors, such as those relating to the availability and introduction of evidence, and of the public interest factors, such as the interests of the forum, the applicable law, and respect for the legislative and adjudicatory jurisdiction of a co-equal sovereign, favor litigation of this case in Mexico. Because these analyses so strongly favor removal of this litigation to Mexico and because defendant is willing to waive whatever defenses it has arising from plaintiff's failure to bring a timely action in Mexico, this case should be dismissed on grounds of *forum non conveniens.*

## V.

## ARGUMENT

A.    **All of the Elements Needed for Dismissal for *Forum Non Conveniens* are Present in this Case**

The test for deciding a motion to dismiss based on *forum non conveniens* is the same "in all cases regardless of their jurisdictional basis or subject matter." *In Re Air Crash Disaster Near New Orleans, Louisiana,* 821 F.2d 1147, 1163 (5th Cir. 1987), *vacated and remanded on other grounds,* 109 S.Ct. 1928 (1989), *modified,* 883 F.2d 17 (5th Cir. 1989).

5

A *forum non conveniens* analysis is conducted in three steps. The first step is to determine whether there exists another forum that is available to the litigants and would provide an adequate remedy to the prevailing party. The second and third steps involve evaluations of various private and public interest factors in the context of the circumstances at hand. *Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824, 835 (5th Cir. 1993); *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 259-261, 102 S.Ct. 252, 267-268 (1981).

### 1.    An Alternative Forum is Both Available and Adequate

As stated by the Fifth Circuit in *Quintero v. Klaveness Ship Lines,* 914 F.2d 717, 727 (5th Cir. 1990):

> A foreign forum is **available** when the entire case and all parties can come within the jurisdiction of that forum . . . . A foreign forum is **adequate** when the parties will not be deprived of **all** remedies or treated unfairly . . . even though they **may not enjoy the same benefits** as they might receive in an American court.

*Quintero,* 914 F.2d at 727, *quoting, Air Crash,* 821 F.2d at 1165 (Emphasis added).

### a.    Availability

All parties can be brought within the jurisdiction of the Mexican court. Affidavit of Carlos Loperena Ruiz, Perforadora's expert on the law of Mexico, at p. 4, ¶ 9 and p. 8, ¶ 25. Mr. Loperena's affidavit, to which his *curriculum vitae* is appended, is attached as Exhibit 1 to Perforadora's motion.

Perforadora is a Mexican corporation that does business in Dos Bocas, Mexico, and maintains its principal place of business in Mexico City, Mexico.[1]    As shown in Mr. Loperena's

---

[1]According to Moore's Federal Practice:

> Ordinarily, the alternative forum will be deemed both "available" and "adequate" if the defendant is amenable to process in the other jurisdiction. Thus, **this requirement will be satisfied, for example, if the defendant resides in the alternative forum** . . .

affidavit, the courts of Mexico are open to non-citizens such as SSI, who may in those courts seek redress for the alleged wrongdoing of Perforadora. Loperena Affid., p. 4, ¶ 9.

### b.    Adequacy

As was stated by the Fifth Circuit in *Quintero*, ". . . there is a presumption that the substantive law of a foreign forum is adequate." 914 F.2d at 728. Mr. Loperena's affidavit further supports and confirms the adequacy of the Mexican forum by observing that Mexican law expressly provides civil redress of conversion of property, which is the relief SSI seeks in this Court.

Mexican law recognizes the tort of conversion and provides an adequate civil remedy. Loperena Affid., p. 4, ¶ 7. SSI can bring a civil suit for conversion against Perforadora, and Perforadora will agree to waive its laches, limitations and prescription defenses should SSI institute such a suit in Mexico following a dismissal of this suit on grounds of *forum non conveniens*. See Affidavit of Sergio J. Alarcon, attached as Exhibit 2, to Perforadora's motion, p. 4, ¶ 11a and 11b.

The fact that the law and procedure of the Mexican courts may be different or may even be less favorable than those of United States courts does not warrant denial of a motion to dismiss on *forum non conveniens* grounds. *Piper*, 454 U.S. at 249-251, 102 S.Ct. at 262. *See also, Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser*, A.G., 955 F.2d 368, 372 (5th Cir. 1992) ("Absent unfairness, differences in the law of the alternate forum are not a substantial factor to consider"), citing, *Piper,* 454 U.S. at 254-55, 102 S.Ct. at 265.

We expect that SSI will again complain about difficulties it earlier encountered with the Mexican legal system. But SSI's difficulties were more the result of SSI's president (Wolfgang Burnside) and his Mexican attorney's indifferent handling of the proceeding than of any deficiency

---

17 Moore's Federal Practice Section 111.74[2][f] (Emphasis added).

7

in the Mexican legal system.  That proceeding was not an action for conversion, but a hearing on SSI's attempt to have its property released from the custody of the Ministerio Publico, who was holding the equipment as part of a criminal investigation of Quantum.  Burnside described the attempt as follows:

> "Q.    What did you retain the lawyer to do?
>
> A.    A two-pronged approach: first of all, to recover my equipment that Central [Perforadora] was in possession of; and, secondly, to recover the funds owed to me by Quantum, a client in Mexico.
>
> *        *        *
>
> Q.    Have your lawyers down there commenced any legal proceeding against Quantum?
>
> *        *        *
>
> A.    I don't know if they have.

Deposition of Wolfgang Burnside taken in the Southern District of Mississippi case on August 4, 1998, pp. 72-73.  Copies of the cited portions of the deposition are attached to Perforadora's motion collectively as Exhibit 3.

> Q.    Who is or who was Mr. Olivera?
>
> *        *        *
>
> A.    He was assisting us from time to time.
>
> Q.    Doing what?
>
> A.    Basically, just a liaison.  He was a contact.  He knew a lot of people; so he would just feed me information.
>
> Q.    Did he get any compensation for that from SSI?

8

A.  No he did not. Although, I did send the sum of $3,500 into his account, which was supposed to be utilized to try and recover the MAXROV.[2]

Q.  Has he ever made any accounting to you for what happened to those funds?

A.  I think he bought a car.

        *     *     *

Q.  He didn't report any decision by the tribunal there to not release the equipment?

        *     *     *

A.  Mr. Olivera was very vague. All I know is that he and his wife both testified on my behalf. That was all, just testified that I owned the equipment. He was just trying to assist me in getting my seized equipment returned to me.

Burnside Depo. pp. 64-67.

Q.  You say you got no justice from the Mexican courts? This was in this proceeding where Olivera and his wife testified?

A.  I just felt at the time that I got legal counsel in Mexico, I wasn't getting anywhere. We were just spinning our wheels. I was getting no information. I didn't know what was going on. All I knew was that I was paying money.

Q.  So you were dissatisfied with the results in the Mexican courts?

A.  Yes, sir.

Q.  Instead, you decided to come file suit in the United States courts?

---

[2]MAXROV is Mr. Burnside's designation for part of SSI's equipment.

9

> A.    Yes.

Burnside Depo. p. 106.

> Q.    Did anyone else give testimony or evidence as to your
>        ownership and the attempts to get possession of this
>        equipment?
>
> A.    I'm not sure. Maybe my legal counsel there, possibly.
>        I'm not sure.
>
> Q.    Who is your legal counsel there?
>
> A.    Well, it was my legal counsel. They are no longer. It
>        was a Mr. Jamie Herrera and a Mr. Braulio
>        Manzaneque Rodriguez.

Burnside Depo. p. 68, lines 6-17.

As the First Circuit noted in *Mercier v. Sheraton International, Inc.*, 935 F.2d 419 (1ˢᵗ Cir. 1991), a particular plaintiff's "difficulties" with a foreign legal system will not be given great weight in assessing the adequacy of a forum. The district court in *Mercier* held that the plaintiff's misgivings about Turkish justice were not sufficient to overcome the presumption of the Turkish courts' adequacy. The First Circuit Court of Appeals, in remanding the matter for additional factual inquiry, observed:

> [W]e share the district court's doubt that Susan Mercier's personal
> difficulties with the Turkish system - **as opposed to a showing of
> Turkish justice's systematic inadequacy** - can provide an
> appropriate basis for a finding that Turkey is an inadequate forum.

935 F.2d at 427 (emphasis added.) Similarly, Burnside's alleged difficulties in a particular Mexican proceeding, as opposed to a showing of "systematic inadequacy" of the entire Mexican legal system, cannot provide an appropriate basis for a finding that Mexico is an inadequate forum.

The Fifth Circuit in *Gonzales v. Chrysler Corporation*, 301 F.3d 377 (5th Cir. 2002), in connection with a *forum non conveniens* inquiry, recently did an exhaustive analysis of whether Mexico was an adequate forum. The plaintiff, a Mexican citizen, brought suit against several U.S. corporations arising out of a traffic accident in Mexico in which his Chrysler vehicle's passenger-side airbag deployed, killing his three year old son. The main issue presented to the Fifth Circuit was whether a Mexican cap on damages ($2,500 for loss of a child's life) rendered Mexico an inadequate forum for resolving plaintiff's tort suit against Chrysler and designer of the airbag.

The court first considered whether the lack of a strict liability cause of action in Mexico rendered Mexico an inadequate forum and concluded that it did not.   Plaintiff next argued that because his cost to pursue the claim would exceed the damages cap, plaintiff had no real remedy. The Fifth Circuit, starting with basic principles of comity, rejected the notion that Mexico was therefore an inadequate forum, stating:

> Mexico, as a sovereign nation, has made a deliberate choice in providing a specific remedy for this tort cause of action. In making this policy choice, the Mexican government has resolved a trade off among the competing objectives and costs of tort law, involving interests of victims, of consumers, of manufacturers, and of various other economic and cultural values. **In resolving this trade off, the Mexican people, through their duly elected law makers, have decided to limit tort damages with respect to a child's death. It would be inappropriate - even patronizing - for us to denounce this legitimate policy choice by holding that Mexico provides an inadequate forum for Mexican tort victims.**
>
> \*                  \*                  \*
>
> ....[W]e hold that the district court did not err when it found that the cap on damages did not render the remedy available in the Mexican forum clearly unsatisfactory.

301 F.3d at 381-382 (Emphasis added).

11

In addressing the plaintiff's "economic viability" argument the court observed:

> We nevertheless are unwilling to hold as a legal principle that Mexico offers an inadequate forum simply because it does not make economic sense for [plaintiff] to file this lawsuit in Mexico.

> \*                          \*                          \*

> In sum, we find troublesome and lacking in guiding principle the fact that the adequacy determination could hinge on constantly varying and arbitrary differences underlying the 'economic viability' of a lawsuit.

301 F.3d at 383.

Even before *Gonzalez*, Texas federal courts had repeatedly found Mexico to be an adequate forum. *See, Urena Taylor v. Daimler Chrysler Corp.*, 196 F. Supp. 2d 428, 433 (E.D. Tex. 2001) ("While certain differences may exist between the trial of this [wrongful death] action in Texas and one in Mexico, they do not warrant a finding that the Mexican forum is not an adequate forum."); *Seguros Comercial Americas, S.A de C.V. American President Lines, Ltd.*, 933 F. Supp. 1301 (S.D. Tex. 1996) (Dismissal on *forum non conveniens* grounds of claim filed in Texas arising out of a hijacking of cargo in Mexico). The court in *Seguros* rejected the argument that plaintiff would not receive a fair trial in a Mexican court, stating:

> It would be the height of presumption to insist on the parochial concept that all disputes must be resolved under our law and in our courts, and that anything short of American justice is inadequate.

933 F. Supp. at 1309 quoting *Neosac, Ltd. v. Vinmar Impex, Inc.*, 810 F. Supp. 829, 834 (S.D. Tex. 1993). *See also*, *Seguros Comercial Americas, S.A. de C.V. v. American President Lines, Ltd.*, 910 F. Supp. 1235 (S.D.Tex. 1995) (involving similar facts and the same holding as 933 F. Supp. 1301, *supra*.).

12

Accordingly, the proposed alternative forum in Mexico is both available and adequate.  It would be no less "patronizing" and "presumptuous" in this case than it would have been in *Gonzalez* and *Seguros* for a court of this country to hold that the courts of Mexico are incapable of affording the parties justice.

**2.    The Private Interest Factors Weigh Heavily in Favor of Dismissal.**

Once a court has determined that the proposed alternative forum is adequate, the court must consider private interest factors. *Quintero*, 914 F.2d at 727; *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 293 (2d Cir. 1996). Among the private interest factors of which the Supreme Court has directed consideration are:

> Relative ease of access of sources of proof; availability of compulsory process for attendance of unwilling witnesses; the possibility of view of premises, if view would be appropriate to the action; and all of the practical problems that make trial of the case easy, expeditious and inexpensive.

*Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843.

**a.    Ease of Access to Sources of Proof — Location of Witnesses, Documents and Operative Events.**

The location of fact witnesses in the forum where the operative events occurred is a factor that favors *forum non conveniens* dismissal. *See, Baumgart*, 981 F.2d at 836; *Quintero*, 914 F.2d at 728. Further, the fact that expert witnesses from Mexico will be needed to testify on Mexican law weighs in favor of dismissal. *Seguros Comercial Americas v. American President Lines, Ltd., supra*, 933 F. Supp. 1311.

Most of the witnesses in this case are in Mexico. Alarcon Affid., p. 3, ¶10. It would be difficult, expensive and time consuming to transport these witnesses to Texas. *See, Seguros*, 933 F. Supp. at 1311. The alleged conversion took place in Mexico, the vessel was manned by Mexicans, and the subsequent transportation and storage of the equipment occurred in Mexico. Mr. Burnside and his former employee, Michael Carlisle, will likely be the only witnesses who reside in the United States: none of Perforadora's witnesses reside in the United States; no witness resides in Texas.

14

Moreover, many of the witnesses would require an interpreter to testify in this Court. Because Perforadora's witnesses are Spanish speaking, and the outcome of a trial on the merits will come down to credibility determinations, Perforadora's officers and employees would be prejudiced by having to testify in their second language or through an interpreter.

The following additional witnesses, who are not employed by either SSI or Perforadora, and hence not subject to the control of the parties, will likely be needed to testify at trial: one or more employees of Pemex; former employees of Quantum, who are residents of Mexico; personnel of the Mexican Department of Customs, who will testify concerning the customs declarations, their expiration and the rules affecting SSI's equipment, which had been imported to Mexico by Quantum; an independent marine agent, Nicolas Morales, who represented Quantum in Mexico; Oscar Olivera Villaneuva, who acted as Quantum and SSI's agent in Mexico; and the principals of Oceatec, S.A. de C.V., who had preliminary discussions with SSI about possible additional work in Mexico and would testify regarding damages. Alarcon Affid., pp. 2-4, ¶¶ 3-10. As noted by the Fifth Circuit in *Perez and Compania (Cataluna), S.A. v. M/V Mexico 1*, 826 F.2d 1449, 1453 (5ᵗʰ Cir. 1987), it is undesirable for such cases to be tried on depositions and affidavits, which is how this case would have to be tried should this Court retain it.[3]

**b.     Availability of Compulsory Process.**

As noted in *Dunham v. Hotelera Canco S.A. de C.V.*, 933 F. Supp. 543, 554 (E.D. Va. 1996),

---

[3]Perforadora was forced, to its prejudice, to defend itself in the Mississippi litigation on precisely this sort of "cold" record. See *Onaway Transportation Co. v. Offshore Tugs, Inc.*, 695 F.2d 197,200 (5ᵗʰ Cir. 1983).

> [W]e note that under this Circuit's jurisprudence, when a case is tried on a "cold" record consisting entirely of depositions and documents, the burden of proving the district court's findings clearly erroneous "is to some extent ameliorated."

See also, cases cited therein.

> Because most of the witnesses to this matter reside in Mexico, there
> is no mechanism by which this [Eastern District of Virginia] Court
> could provide compulsory process for the attendance of witnesses.

933 F. Supp. at 554. *See also, Urena Taylor v. Daimler Chrysler Corp.*, 196 F. Supp. 2d 428, 433

(E.D. Tex. 2001) (noting that, in dismissing the case on *forum non conveniens* grounds, the court had

no power of compulsory process over citizens of Mexico). Similarly, this Court has no mechanism

to require Mexican witnesses, other than those employed by Perforadora, to appear for trial in Texas.

The Mexican courts, on the other hand, can compel the attendance of the employees of Pemex,

customs office employees, vessel agents, the former employees of Quantum, the marketing agent

and the principals of Oceatec. Loperena Affid., at p. 5, ¶¶ 14 and 15.

### c.    The Possibility of View of Premises.

To the extent a view of the premises would be helpful, this factor weighs in favor of

dismissal since all of the premises involved are located in Mexico. *See, Blanco v. Banco Industrial*

*de Venezuela,* 997 F.2d 974, 983 (2d Cir. 1992).

### d.    Practical Problems That Make Trial Easy, Expeditious and Inexpensive.

The cost of traveling for the parties and witnesses would be greater for a trial in Texas than

one in Mexico. If forced to litigate these claims in a forum foreign to where they arose, Perforadora

intends to present live testimony at trial of all willing Mexican witnesses. This burden on

Perforadora is out of all proportion to any convenience SSI can point to in seeking to litigate in a

forum which is for itself inconvenient. If this case is not dismissed on *forum non conveniens*

grounds, even SSI's two fact witnesses, Wolfgang Burnside and Michael Carlisle, will have to travel

from Louisiana and Alabama, respectively, to Brownsville. SSI will doubtless argue that it will be

inconvenient for these witnesses to travel to Mexico. Yet, they have previously gone to the trouble

16

of marketing themselves in Mexico, executing and performing contracts in Mexico and profiting from their business in Mexico.

The cost of translating numerous Spanish documents into English strongly favors Mexico as the more appropriate forum. *Baumgart*, 981 F.2d at 836 (noting language problems that would arise if the case were tried in the United States, including the need to translate into English all documents and investigative reports created in Germany); *Quintero*, 914 F.2d at 729 ("The likelihood of needing translators for testimony increases the probable length and cost of trial."); *Blanco*, 997 F.2d at 982 (Necessity of translating documentary evidence and deposition testimony into English, at significant cost to the parties, militates strongly in favor of the foreign forum).

Perforadora must explain to the tribunal hearing the merits of their case, the earlier Mexican proceedings and their context of Mexican law and procedure. While some pertinent documents were translated in the earlier federal court litigation, if Perforadora is to receive a fair trial regarding the actions it took within the Mexican judicial system, with respect to the property left on board its vessel, the record of the Mexican proceedings must be translated. Loperena Affid., at p. 6, ¶¶ 16 and 18. We have no doubt that this Court can apply Mexican law. But the Court would be called upon not only to apply Mexican law but also to evaluate proceedings before the Mexican judicial system. Thus, the problems of proof of Mexican law and the time and expense of translating applicable statutes must be considered. Those problems would extend to issues of Mexican substantive law as well as procedure.

Should this case be dismissed and re-filed by SSI in the appropriate court in Mexico, Perforadora agrees to pay any judgment rendered in SSI's favor and to post security to ensure enforceability. Alarcon Affid., p. 5, ¶ 11d. Accordingly, all of the practicality factors strongly point in favor of the Mexican forum.

17

3.    **The Public Interest Factors Require Dismissal**

The third part of the *forum non conveniens* analysis is consideration of "public interest" factors.  These include: the administrative difficulties flowing from court congestion; the local interest in having localized controversies resolved at home; the interest in having the trial of a diversity case in the forum that is most familiar with the governing law; the avoidance of unnecessary conflicts of law, or problems in application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Baumgart*, 981 F.2d at 837, *citing, In Re Air Crash Disaster*, 821 F.2d at 1162-1163 and *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843.

Because an adequate alternate forum exists and the private interest factors weigh in favor of a *forum non conveniens* dismissal, this Court need not consider the "public interest" factors. *Baumgart*, 981 F.2d at 837; *In Re Air Crash Disaster*, 821 F.2d at 1165 (mandating consideration of public interest factors only if private interest factors do not favor dismissal).  Nevertheless, as set forth below, the public interest factors further support dismissal on *forum non conveniens* grounds.

(a)    **Administrative Difficulties Flowing from Court Congestion.**

In *Gulf Oil Co. v. Gilbert*, the Supreme Court noted that, "Administrative difficulties follow for courts when litigation is piled up in congestion centers instead of being handled at its origin." 330 U.S. 501, 67 S.Ct. 839.  This Court commented on its heavy docket of cases having a substantial nexus with this district in *Seguros Comercial v. American President Lines, supra*, 933 F. Supp. at 1314.  Accordingly, this Court has a strong interest in avoiding the expenditure of judicial resources on parties and a dispute that have little connection with this forum.  Further, Mr. Loperena's affidavit demonstrates that the proposed Mexican forum is not congested and could handle the litigation in an expeditious manner.  Loperena Affid., p. 5, ¶ 11.

18

**(b)     The Interest in Having Localized Controversies
Resolved at Home.**

The interest of non-Texan SSI in having this controversy decided in Texas is significantly less than the interest claimed by the forum-domiciled plaintiff in *Dunham, supra,* 933 F. Supp. at 555. Yet, the plaintiff's case in *Dunham* was dismissed on *forum non conveniens* grounds because of, among other things, the strong interest of the Mexican courts in adjudicating the controversy. In *Dunham,* the plaintiff (an American citizen) was injured while vacationing in Cancun, Mexico. The court concluded that:

> [T]he interest of a Mexican court in adjudicating this matter far outweighs any interest of this forum. Although it is undisputable **that Eastern District of Virginia has an interest in protecting the rights of United States citizens who travel abroad, these interests are secondary to the interest of Mexico in this action. Mexico has an interest in providing a safe haven for tourists who visit Cancun. It also has a strong interest in determining how to assess liability against any of its citizens who may be responsible for the plaintiff's injuries.** The case involves many Mexican defendants in an accident in Mexico. As stated above, most of the witnesses and evidence are also in Mexico. **The action therefore can be characterized as a "localized controversy" of the type the *Gulf Oil* court stated should be decided "at home."**

933 F. Supp. at 555. (Citations omitted, emphasis added).[4]

Mexico has an interest in providing a fair and accessible legal system for not only tourists, but also for companies doing business in Mexico. Mexico also has an interest in redressing alleged wrongs committed by Mexican corporations, especially when they are alleged to have been committed in Mexico. According to *Dunham,* these interests outweigh the interests of U.S. federal

---

[4]Many courts, including the Supreme Court in *Piper* have dismissed litigation where a foreign nation possesses a greater governmental interest. See, *Piper,* 454 U.S. at 260, 102 S.Ct. at 268; *Pain v. United Technologies Corp.,* 632 F.2d 1027, 1032 (3d Cir. 1998); *Demelo v. Lederle Labs,* 801 F.2d 1058, 1063-4 (3d Cir. 1988).

19

courts in protecting U.S. citizens who travel abroad. That holding applies with even greater force in this case, where a U.S. corporation was in Mexico, not as a tourist, but as a business engaged in commercial pursuits with Mexican companies. That all of the operative events occurred in Mexico and that almost all of the witnesses reside in Mexico, as in *Dunham*, further supports dismissal of this case.[5]

### (c)    Familiarity of the Forum with the Governing Law.

In order to evaluate this factor, the Court must first determine which law applies. Assuming for purposes of this motion the existence of admiralty jurisdiction, the choice-of-law determination is governed by the Lauritzen-Rhoditis Test.[6] *Quintero*, 914 F.2d at 730. This test requires that a district court consider the following factors in choosing which law to apply.

### (1)    The Place of the Wrongful Act.

The place of the wrongful act, even according to plaintiff, was Mexican territorial waters. (Compl., ¶ 17). Perforadora contends that if any wrongful act occurred, it was on Mexican land. But, to any extent Perforadora wrongfully had custody of SSI's equipment aboard the M/V DON FRANCISCO, that alleged tort occurred in Mexican waters. No wrongful act is alleged to have occurred in Texas, the United States or their territorial waters.

---

[5] We understand that the Secretariat of Foreign Relations for the Mexican government intends to petition this Court for leave to file a brief as amicus curiae supporting Perforadora's argument that Mexico's predominant interest in this case militates in favor of dismissal on *forum non conveniens* grounds.

[6] The test is derived from *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) and *Hellenic Lines v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).

20

### (2)    The Law of the Flag.

The M/V DON FRANCISCO, on which the equipment was allegedly seized, is a Mexican flagged vessel.[7]

### (3)    Allegiance or Domicile of the Injured Party.

The plaintiff in this case is domiciled outside of Texas, in Louisiana, and voluntarily transported its equipment to Mexico. While the *Lauritzen* case speaks of the importance of this factor in cases involving physical injuries to seaman, 345 U.S. at 586, 73 S.Ct.930, SSI's claims are for property and economic loss only.

### (4)    Allegiance of the Shipowner.

The shipowner is Perforadora, a Mexican corporation.

### (5)    Place of Contract.

Perforadora had no contract with SSI. The only relevant contract and the only maritime contract was the charter between Perforadora and Quantum, which was signed in Mexico.

### (6)    Accessibility of a Foreign Forum.

As established in Mr. Loperena's affidavit, the Mexican forum is accessible to SSI. Loperena Affid., pp. 4-5, ¶¶ 9 and 12.

### (7)    Law of the Forum.

This specific test has been held to be inapplicable where the defendant, as in this case, is involuntarily made subject to U.S. jurisdiction. *Quintero*, 914 F.2d at 730. In any event, Texas conflict-of-law rules would choose the laws of Mexico. In tort cases, Texas applies the "most

---

[7]See "Acta Informativa" indicating that the M/V DON FRANCISCO hales from the port of Ciudad del Carmen, Campeche, Mexico, attached as Exhibit 4.

21

significant relationship" test as set forth in sections 6 and 145 of the Restatement (Second) of Conflict of Laws.[8] *Reinhardt v. Key Risk Management, Inc.*, 2003 W.L. 292176 (N.D. Tex. February 6, 2003), *citing, Gutierrez v. Collins*, 583 S.W. 2d 312 (Tex. 1979). Because of the strong interest of Mexico in this Mexican business dispute, because of the justified expectations of the parties doing business in Mexico, because of the occurrence of the alleged tort in Mexico and because the relationship between the parties was centered in Mexico, a Texas court would apply Mexican law.

### (8)    Shipowner's Base Operations.

Perforadora's base operations are in Mexico City, Mexico.

---

[8]Section 6 provides:
> (1) A court, subject to Constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) Where there is no such directive, the factors relevant to the choice of the applicable rule of law include:
>> (a) the needs of the interstate and international system,
>> (b) the relevant policies of the forum,
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>> (d) the protection of a justified expectation,
>> (e) the basic policies underlying the particular field of law,
>> (f) certainty, predictability and uniformity of result, and
>> (g) ease in the determination and application of the law to be applied.

> Section 145 provides:
> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

> (2) Contacts to be taken into account in applying the principals of § 6 to determine the law applicable to an issue include:
>> (a) the place where the injury occurred,
>> (b) the place where the conduct causing the injury occurred,
>> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>> (d) the place where the relationship, if any, between the parties is centered.

> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

22

The above analysis clearly demonstrates an absence of significant contacts with Texas and the existence of substantial contacts with Mexico, all of which favor the application of Mexican rather than United States law. That Mexican law is applicable gives further support to the conclusion that Mexico is the most convenient forum. *Quintero*, 914 F.2d at 729. Moreover, because the doctrine of *forum non conveniens* is designed to avoid complex exercises in comparative law, the public interest factors point towards dismissal where the court would be required to untangle problems in conflicts of law and in law foreign to itself. *Piper*, 454 U.S. at 251, 102 S.Ct. at 252, citing, *Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843.

### d.    The Unfairness of Burdening the Courts of Texas with a Foreign Dispute.

In this case, the federal court in Texas has no interest in assessing whether a Mexican corporation is liable to a Louisiana corporation owned by a British national for a tort that allegedly occurred in Mexico. Consequently, it is unfair to burden Texas federal district court with this case.

### e.    Respect for Co-Equal Sovereigns.

The basic principles of comity constitute a public interest factor that weighs in favor of dismissal on grounds of *forum non convenines*. *See Blanco v. Banco Industrial de Venezuela*, 997 F.2d 974, 983 (2d Cir. 1992); *Laker Airways v. Pan American World Airways*, 731 F.2d 909, 937 (D.C.Cir. 1984) ("Comity serves our International System like the mortar which cements together a brick house. No one would willing permit the mortar to crumble or be tipped away for fear of compromising the entire structure"); *Republic of the Philippines v. Westinghouse Electric Co.*, 43 F.3d 65, 75 (3d Cir. 1995) ("Comity is essentially a version of the golden rule: 'A concept of doing to others as you would have them do to you.'"). In *Lauritzen* court was well aware of the need for comity and reciprocity when dealing with international commerce. "[The general maritime law]

23

aims at stability and order through usages which considerations of comity, reciprocity and long range interests have developed to define the domain which each nation will claim as its own." *Lauritzen*, 213 U.S. at 582, 73 S.Ct. at 928.

In light of this case's overwhelming connection to Mexico, including its territory, its territorial waters, vessels flying its flag, its citizens, its substantive and procedural laws, both criminal and civil, the officials that enforce the laws and the judicial system that adjudicates them, comity represents the most important public interest factor in this case. Loperena Affid., p. 6, ¶ 18.

This factor along with the other public and private interest factors clearly indicate that a Mexican forum is more appropriate for the litigation of these claims. A Mexican civil court will be much better equipped to do what this Court is called upon to do: properly judge the impact of prior Mexican proceedings, and the legal effects of the actions of the Ministerio Publico, the actions of Perforadora Central's attorney and of SSI's attorney on the rights and liabilities of Perforadora and SSI in a civil case arising from events that occurred exclusively in Mexico.

**B.    This Plaintiff's Choice of Forum is Entitled to Little Deference**

SSI will contend that because it is an American citizen its choice of forum is accorded significant deference and should not be disregarded on *forum non conveniens* grounds. The courts have recognized, however, that even an American plaintiff's choice of a United States forum is not immune to *forum non conveniens* dismissal. *Moore's Federal Practice,* Section 111.75[1]; *Scottish Air International, Inc. v. British Caladonia Group, PLC,* 81 F.3d 1224, 1232 (2d Cir. 1996) ("Although a citizen plaintiff's choice of forum deserves considerable deference, it is not automatically dispositive in determining a *forum non conveniens* motion.") In fact, dismissal may be appropriate even when both parties are American. *Mercier v. Sheraton International, Inc.*, 981

24

F.2d 1345, 1354-1355 (1st Cir. 1992), *cert. denied*, 508 U.S. 912 (1993).

Another factor diminishing the deference to be accorded SSI's choice of forum is that SSI has not chosen its "home forum" in which to file suit.[9] "[A] foreign plaintiff's choice deserves less deference." *Piper*, 454 U.S. at 256, 102 S.Ct. at 266. *See also, Lan Associates v. Bank of Nova Scottia*, 1997 U.S. Distr. LEXIS 11931 (S.D. N.Y. Aug. 11, 1997) ("Plaintiffs [residents of Connecticut] here are considered 'foreign' for purposes of this motion because they are not residents of the forum state of New York."); *Atomic Capital Investments v. KLM Royal Dutch Airlines*, 1998 U.S. Dist. LEXIS 2343 (S.D. N.Y. Mar. 3, 1998) ("Plaintiff Atomic [a Delaware corporation with its principal place of business in Washington, D.C.] is considered 'foreign' for *forum non conveniens* purposes because it is not a resident of the forum state of New York."). *See also, Mediterranean Gulf, Inc. v. Hirsh*, 783 F. Supp. 835, 842 (D.N.J. 1991), and *Sussnam v. Bank of Israel*, 801 F. Supp. 1068, 1072 (S.D. N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir. 1993). The fact that the principal of SSI, Wolfgang Burnside, is not a U.S. citizen should also weigh against deference to his choice of forum, as should the fact that SSI has listed its foreign insurers as interested in the outcome of this litigation.

SSI has impermissibly chosen this forum in an effort to secure the application of more favorable law.[10] Additionally, SSI's choice of forum is not "convenient;" it is inconvenient even to

---

[9]Deference to a plaintiff's choice of forum rests on the assumption that the plaintiff has chosen a forum for the sake of convenience. But when the plaintiff has chosen a forum that is foreign to it, that assumption erodes as does the deference owed to the plaintiff's choice. *Piper*, 454 U.S. at 255-256, 102 S.Ct. at 264.

[10] *Piper*, 454 U.S. at 249, 102 S.Ct. at 262, n. 15.

25

itself and cannot be tautologically supported solely by the fact that SSI chose it.  SSI has already

engaged Perforadora in oppressive litigation in one United States court and now attempts to do so

in another.  This is precisely the situation in which the Supreme Court would sanction dismissal.[11]

### C.    Judge Gex Was Misled in His Denial of the Perforadora's Earlier *Forum Non Conveniens* Motion.

In his Memorandum Opinion denying Perforadora's earlier Motion to Dismiss on the

Grounds of *Forum Non Conveniens*, a copy of which is attached to Perforadora's motion as Exhibit

"5," Judge Gex held that an alternative forum was not available in Mexico.  The basis for his denial

of the motion was his being led to believe that only a criminal remedy for conversion was available

in Mexico and that, "...a criminal remedy is clearly inadequate, effectively leaving Submersible [SSI]

with no remedy at all."  Memorandum Opinion, November 23, 1998 at page 14.

Judge Gex reached this conclusion in the following manner.  First, he noted the Perforadora's

expert in the law of Mexico, Mr. Loperena, had opined that "...the laws of Mexico provide for a

recovery for 'theft, conversion or piracy' in the event such claims could be proved" and that "SSI

...would have an adequate remedy under Mexican law."  *Id.*, citing page 4 of Mr. Loperena's earlier

affidavit (also attached to Perforadora's motion as Exhibit "6.")  Judge Gex went on to note that

Perforadora had failed to "provide the Court with applicable provisions under Mexican law which

purport to allow Submersible [SSI] a civil action for 'theft, piracy and/or conversion.'" *Id.*  Judge

Gex then observed that SSI's expert had supplied him with the Mexican "criminal act by which

Perforadora could be held liable for theft." *Id.*  From these two questionable premises, Judge Gex

---

[11]*Gulf Oil v. Gilbert*, 330 U.S. at 507, 67 S.Ct. at 842 ("A plaintiff is sometimes under a temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.")

apparently concluded that the criminal remedy was the only remedy available and that it was "no remedy at all." *Id.*

The syllogism SSI argued to Judge Gex (Perforadora's expert says there is a civil remedy, but gives no citation; SSI's expert says there is a criminal remedy; therefore, there is no civil remedy) was obviously flawed. In fact, to the extent a citation was necessary to validate Mr. Loperena's opinion that a civil remedy was available, he has supplied it with the affidavit submitted in support of this motion in which he cites Article 1910 as authority for the existence of the civil remedy for conversion in Mexico. Loperena Affid., p. 4, ¶ 7.

Although his holding on the inadequacy of the Mexican forum was determinative of the motion filed in his court, Judge Gex went on to discuss the private and public interest factors. His holdings on these issues were, of course, *dicta*. Yet, they, too, were influenced by his erroneous holding on the inadequacy of Mexican law. For instance, when he addressed the public interest factor respecting choice of law, he acknowledged that, "[T]he act allegedly occurred in Mexican territorial waters while aboard a Mexican owned vessel bearing a Mexican flag with its principal place of operations in Mexico City, Mexico [sic]." But he then went on to find that SSI's "allegiance" to the United States, and the fact that Mexican law was "totally inadequate to the action complained of," compelled the conclusion that, "American maritime law should apply where the parties have not contracted to submit to an alternate forum and the appropriate law is that of the United States" (Memorandum Opinion at 20). Thus, a misperceived inadequacy of the Mexican forum, SSI's Louisiana citizenship and the absence of a contractual choice of law led to the application of U.S. admiralty law to a tort that had no connection with the United States.

We submit that Mexico's civil remedy for conversion and a fair analysis of the private and

27

public interest factors, as discussed above, lead inevitably to the application of Mexican law and to a dismissal on grounds of *forum non conveniens.* Judge Gex's ruling was also made some three and a half years prior to the Fifth Circuit's decision in *Gonzales v. Chrysler Corp.*, 301 F.3d 377 (5th Cir. 2002). As discussed above, the Fifth Circuit held in *Gonzales* that, although a damage "cap" of $2,500 made it "economically unviable" to bring a wrongful death suit in Mexico, the Mexican forum was not inadequate. "It would be inappropriate -- even patronizing -- for us to denounce this legitimate policy choice by holding that Mexico provides an inadequate forum for Mexican tort victims." 301 F.3d at 382 (footnote omitted). Even if Judge Gex's ruling that only a criminal remedy for conversion existed in Mexico had not been erroneous, *Gonzalez* would probably require dismissal on *forum non convenines* grounds. But SSI's remedy in Mexican courts is considerably more "viable" than was Mr. Gonzalez's, and it would be equally "patronizing" for a United States court to "denounce" it as "inadequate."

> ### D.  Perforadora Will Waive its Defenses of Limitations and Laches to Permit the Litigation of SSI's Claims in the Courts of Mexico.

Some courts have required, or at least been influenced by, a commitment on the part of the defendant asserting *forum non conveniens* to submit to the jurisdiction of the alternative court and to waive limitations defenses that arose because of the passage of time between the original filing and the one in the alternative forum. *See, Seguros Comercial v. American President Lines, supra,* 933 F.Supp. at 1308, 1315. Perforadora is willing to enter into such a stipulation so that SSI will not be prejudiced by the dismissal of its claims in this Court and may re-assert them in the proper forum, the courts of Mexico.   Loperena Affid., p. 4-8, ¶ 25; and Alarcon Affid., pp. 4-5, ¶ 11.

### VI.

### <u>CONCLUSION</u>

28

For all of the above reasons, this case should be dismissed on *forum non conveniens* grounds, so that the parties can litigate this wholly Mexican dispute in the courts of that country.

Respectfully submitted,

OF COUNSEL:

ROYSTON RAYZOR VICKERY
    & WILLIAMS L.L.P.

KEITH UHLES (#
55 Cove Circle
Brownsville, TX 78523-3509
Telephone:  (956) 542-4377
Facsimile:  (956) 542-4370

MILLING BENSON WOODWARD L.L.P.

JAMES K. IRVIN (#7166)
BENJAMIN O. SCHUPP (#21074)
SERGIO J. ALARCON (#24740)
909 Poydras Street, Suite 2300
New Orleans, LA  70112-1010
Telephone:  (504) 569-7000
Facsimile:    (504) 569-7001

Attorneys for Perforadora Central S.A. de C.V.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing Memorandum in Support of Motion to

Dismiss on *Forum Non Conveniens* has been served upon all counsel of record by depositing same

in the United States Mail, first class postage prepaid and properly addressed, this _____ day of

April, 2003.

wp297822(81928)

30