*33*

United States District Court
Southern District of Texas
FILED

MAY 1 2 2003

Michael N. Milby
Clerk of Court

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SUBMERSIBLE SYSTEMS, INC. | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. B-03-020 |
| | * | |
| PERFORADORA CENTRAL, S.A. de C.V. | * | RULE 9(h) ADMIRALTY |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

## DEFENDANT PERFORADORA CENTRAL, S.A. de C.V.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

KEITH UHLES (Tex. Bar No. 20371100)
(S.D. Tex. No. 1936)
**ROYSTON RAYZOR VICKERY & WILLIAMS L.L.P.**
55 Cove Circle
Brownsville, TX 78523-3509
Telephone: (956) 542-4377
Facsimile: (956) 542-4370

JAMES K. IRVIN (#7166)
BENJAMIN O. SCHUPP (#21074)
SERGIO J. ALARCON (#24740)
**MILLING BENSON WOODWARD L.L.P.**
909 Poydras Street, Suite 2300
New Orleans, LA 70112-1010
Telephone: (504) 569-7000
Facsimile: (504) 569-7001

Attorneys for Perforadora Central S.A. de C.V.

## TABLE OF CONTENTS

PAGE

I.      The relative size of the parties is not a factor ................................. 2

II.     There is a conflict of laws that needs to be resolved .......................... 2

III.    This Court has routinely held that disputes analogous
        to this one should be litigated in Mexico .................................... 4

IV.     The *Gulf Oil v. Gilbert* analysis requires dismissal .......................... 7

V.      Analysis of the *Lauritzen* factors requires the application
        of Mexican law ............................................................ 8

VI.     The United States lacks prescriptive jurisdiction over actions
        that occurred wholly within the sovereign territory of Mexico ................ 13

VII.    Comity, predictability and fairness also require deference
        to Mexican courts and law ............................................... 18

CONCLUSION ......................................................... 20

CERTIFICATE OF SERVICE ............................................. 20

# TABLE OF AUTHORITIES

**PAGE**

## *CASES*

*Agyenkwa v. American Motors Corp.*, 622 F.Supp. 242,
247 (E.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*American Banana Co. v. United Fruit Co.*, 213 U.S.
347, 29 S.Ct. 511 (1909) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19

*The Apollon*, 22 U.S. 362, 9 Wheat 362 (1824) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bilyk v. The Vessel Nair*, 754 F.2d 1541 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1136,
n. 27 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 10, 16

*Cuba R. Co. v. Crosby*, 222 U.S. 473, 480, 32 S.Ct.
132, 133 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

*Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484,
486 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Dunham v. Hotelera Canco S.A. de C.V.*, 933 F.Supp.
543 (E.D.Va. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 11, 16, 18

*EEOC v. Arabian American Oil Co. ("ARAMCO")*,
499 U.S. 244, 111 S.Ct. 1227 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Feinstein v. Curtain Bluff Resort*, 1998 W.L. 458060
(S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Fogleman v. ARAMCO*, 920 F.2d 278 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Foley Bros. Inc. v. Filardo*, 336 U.S. 281, 285, 69 S.Ct.
575, 578 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Garrett v. Moore McCormack Co.*, 317 U.S. 239, 246-47,
63 S.Ct. 246, 251-52 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gonzalez v. Chrysler Corp.*, 301 F.3d 377 (5th Cir. 2002),

*cert. denied*, 71 USLW 3489, 2003 WL 133001 (U.S. 2003) ....................... 4, 5, 18

*In re Aircrash Disaster Near Chicago*, 644 F.2d 594, 612
(7th Cir. 1981) ...................................................... 9

*In re Korean Airlines*, 932 F.2d 1475, 1499 (D.C. Cir. 1991) ........................... 9

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock
Co.*, 513 U.S. 527, 545, 115 S.Ct. 1043, 1054 (1995) .................................. 2

*Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000 (9th Cir. 1987) ........................ 18

*Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 113
S.Ct. 2891 (1993) ...................................................... 17

*Hurtado v. Superior Court of Sacramento County*, 11 Cal.
3rd 574, 522, P.2d 666, 114 Cal.Rptr. 106 (1974) .................................. 3

*Klinghoffer v. S.N.C. Achille Lauro*, 795 F.Supp. 112, 115
(S.D.N.Y. 1992) ...................................................... 10, 11

*Laker Airways v. Pan American World Airway*, 731 F.2d,
909, 937 (D.C. Cir. 1984) ................................................... 18

*Levine v. Central Florida Med. Affiliates*, 72 F.3d 1538, 1551
(11th Cir.), *cert. denied*, 117 S.Ct. 75 (1996) ...................................... 18

*McCulloch v. Sociedad Nacional de Marineros de Honduras*,
372 U.S. 10, 21-22, 83 S.Ct. 671, 677-78 (1963) .................................... 14

*Mercier v. Sheraton International, Inc.*, 935 F.2d 419
(1st Cir. 1991) ...................................................... 6

*Mercier v. Sheraton International, Inc.*, 981 F.2d 1345
(1st Cir. 1992) ...................................................... 7, 13

*Mizokami Bros. of Arizona, Inc. v. Baychem Corp.*, 556
F.2d 975 (9th Cir. 1977)(*per curiam*) *cert. denied*, 434 U.S.
1035 (1978) ...................................................... 11, 13, 19

*Murray v. Schooner Charming Betsy*, 6 U.S. (2 Cranch)
64, 118 (1904) ...................................................... 13

*Neely v. Club Med Management Services, Inc.*, 63 F.3d
166 (3d 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6, 8, 9, 13, 16

*Neo Sack, Ltd. v. Vinmar Impex, Inc.*, 810 F.Supp. 829, 834
(S.D.Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*O'Donnell v. Great Lakes Dredge and Dock Co.*, 318 U.S.
36, 40, 63 S.Ct. 488, 490-91 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Phillips v. Eyre*, L.R. 4 Q.B. 225, 239 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Republic of the Philippines v. Westinghouse Electric Co.*,
43 F.3d 65, 75 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Romero v. International Terminal Operating Co.*, 358 U.S.
354, 79 S.Ct. 468 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sale v. Hashien Centers Counsel, Inc.*, 509 U.S. 155, 133 S.Ct.
2549 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Seguros Commercial Americas, S.A. de C.V. v. American
President Lines, Ltd.*, 933 F.Supp. 1301, 1309 (S.D.Tex. 1996) . . . . . . . . . . . . . . 4

*Sevinson v. Cruise Ship Tours, Inc.*, 1997 U.S. Dist. Lexis
12728, *23 (D.C. V.I. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sharma v. Skaarup Ship Management Corp.*, 699 F.Supp.
440, 448 (S.D.N.Y. 1988), *aff'd* 916 F.2d 820 (2d Cir.
1990), *cert. denied*, 499 U.S. 907, 111 S.Ct. 1109 (1991) . . . . . . . . . . . . . . . . . . 16

*Slater v. Mexican Nat. R. Co.*, 194 U.S. 120, 126 (1904) . . . . . . . . . . . . . . . . . . 14

*Smith v. U.S.*, 507 U.S. 197, 113 S.Ct. 1178 (1993) . . . . . . . . . . . . . . . . . . . . . . 15

*Sohyde Drilling and Marine Co. v. Coastal Gas Producing
Co.*, 644 F.2d 1132, 1136-1137 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Symonette Shipyard v. Clark*, 365 F.2d 464, 468 (5th Cir. 1966) . . . . . . . . . . . . . . 4

*Tramontana v. S.A. Empresa de Viacao Aerea Rio*, 350 F.2d
468, 471 (D.C. Cir. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Aluminum Co. of America*, 148 F.2d 416

(2d Cir. 1945) ........................................................ 14, 17

*United States v. Baker*, 609 F.2d 134 (5th Cir. 1980) .................................. 17

*United States v. Javino*, 960 F.2d 1137, 1142-43 (2nd Cir. 1992) ....................... 17

*Vasquez v. Bridgestone/Firestone, Inc.*, 2003 WL 1389087
*9, _____ F.3d _____ (5th Cir. 2003) ............................................. 5, 19

*Victory Carriers, Inc. v. Law*, 404 U.S. 202, 205, 92 S.Ct. 418,
421-22 (1971) ....................................................................... 16

*Villeman v. Schee*, 15 F.3d 1095, 1994 U.S. App. LEXIS
912, *9 (9th Cir. 1994)(unpublished) ............................................... 3

*Yamaha Motors Corp. v. Calhoun*, 516 U.S. 199, 206,
116 S.Ct. 619, 623 (1996) .......................................................... 2

## *STATUTES*

15 U.S.C. § 1 *et seq.* ....................................................... 14

15 U.S.C. § 6(a) ............................................................. 17

46 U.S.C. § 688(b) (1988) .................................................... 16

## *OTHER AUTHORITIES*

Gulf Oil Analysis ........................................................ 2, 6, 7

*J. Beale*, Treatise on the Conflicts of Law, §4 (1935) ............................... 19

Lauritzen Analysis .......................................... 2, 3, 6, 8, 9, 10, 15

Restatement of the Law of Foreign Relations of the United States,
Third, Section 401 (1987) ....................................................... 13

Restatement of the Law of Foreign Relations of the United
States, Third, Section 402 (1)(c) (1987) ........................................... 14

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SUBMERSIBLE SYSTEMS, INC. | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. B-03-020 |
| | * | |
| PERFORADORA CENTRAL, S.A. de C.V. | * | RULE 9(h) ADMIRALTY |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT PERFORADORA CENTRAL, S.A. de C.V.'S
## REPLY MEMORANDUM IN SUPPORT OF ITS MOTION
## TO DISMISS FOR *FORUM NON CONVENIENS*

Defendant Perforadora Central S.A. de C.V. ("Perforadora") replies as follows to the

Response filed by plaintiff Submersible Systems, Inc. ("SSI") to Perforadora's Motion to Dismiss

for *forum non conveniens*. Because they are in reply to SSI's arguments, the following discussions

overlap to some extent, but the relevant considerations of choice-of-law, comity and prescriptive

jurisdiction also, necessarily, overlap. When applied to a case arising from a tort that occurred

entirely in Mexico and that implicates almost entirely Mexican interests, all of these considerations

lead to the conclusion that this Court should defer to the courts and the law of Mexico.

## I.    The relative size of the parties is not a factor

SSI first argues that it is a much smaller company than Perforadora (Response, pp. 4-5). But SSI cites no authority for the proposition that relative size is a factor to be considered under either the *Gulf Oil* or the *Lauritzen-Rhoditis* analysis. The only conceivable bearing relative size might have is that if SSI is as small as it portrays itself, any injury to SSI could not conceivably have imposed an effect on U.S. commerce sufficient to invoke the interest of the United States and the application of U.S. law to a dispute that arose entirely in Mexico. The legal insignificance of the effect of SSI's supposed injury is discussed in greater detail below.

## II.    There is a conflict of laws that needs to be resolved

SSI twice argues that, "With admiralty jurisdiction comes the application of U.S. admiralty law." (Response at p. 2 (*see also*, p. 20), *citing, Yamaha Motors Corp. v. Calhoun*, 516 U.S. 199, 206, 116 S.Ct. 619, 623 (1996), and *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 545, 115 S.Ct. 1043, 1054 (1995). But neither *Yamaha* nor *Grubart* used the letters "U.S." to modify "admiralty law," nor did they discuss the application of foreign law. While a finding of admiralty jurisdiction will often oust otherwise applicable state law, even the Supreme Court in *Grubart*, which SSI inaccurately paraphrases, recognized that the "...exercise of federal admiralty jurisdiction does not result in the automatic displacement of state law." *Grubart*, 115 S.Ct. at 1054, quoted in *Yamaha* at 116 S.Ct. 623.

If SSI's proposed rule -- that U.S. admiralty law applies **any** time there is admiralty jurisdiction -- were valid, there would never be a need for the *Lauritzen-Rhoditis* analysis, and neither of those cases, nor the many cases that have followed them, would be in the reporters. Where a United States corporation engages in business in Mexico that leads to a dispute with a Mexican

2

corporation, based entirely upon the Mexican corporation's conduct in Mexico, Mexican law is surely implicated. If applicable Mexican law is different from U.S. maritime law in any respect, *Lauritzen* mandates that a U.S. court sitting in admiralty determine whether Mexican law should be applied.

While at one point SSI attempts to suggest there is no conflict of laws because, "...both U.S. and Mexican law condemn conversion of property" (Response, p. 2), SSI elsewhere concedes the existence of a conflict: "...Mexican law would probably limit Submersible's recovery to the value of the converted equipment, as opposed to the full panoply of damages under U.S. law, including ...consequential damages...and punitive damages...." (Response, p. 9, citing the affidavits of Perforadora's expert in Mexican law.) Indeed, U.S. courts have recognized that Mexican law denies awards of punitive sanctions and limits consequential damages in civil cases. *See Villaman v. Schee*, 15 F.3d 1095, 1994 U.S. App. LEXIS 912, * 9 (9th Cir. 1994)(unpublished), *citing, Hurtado v. Superior Court of Sacramento County*, 11 Cal. 3rd 574, 522, P.2d 666, 114 Cal. Rptr. 106 (1974). "Mexico's limitation of tort damages is designed to protect its residents from excessive financial burdens or exaggerated claims." 522 P.2d at 670.

SSI cites *Neely v. Club Med Management Services, Inc.*, 63 F.3d 166 (3d 1995), for the proposition that U.S. law must be applied in any admiralty case. But one of the reasons U.S. law was applied in that case instead of the law of St. Lucia, the place of the accident, was that no one suggested to the court what the law of St. Lucia was.

> ...[T]he defendants have presented no information concerning what potentially applicable St. Lucian law might provide...Accordingly, we cannot calibrate the extent of foreign interests at stake, and unless virtually all of the *Lauritzen* factors point away from the United

3

States, application of American law will be reasonable in light of the
American interests that the plaintiff has shown to be implicated.

63 F.3d at 190. Thus, the absence of any proof of St. Lucian law would have made American law

applicable by default, even if the plaintiff had not been an American Jones Act seaman.[1]

Accordingly, in this case there is a conflict of laws that must be resolved as part of the *forum*

*non conveniens* analysis. Additionally, in the event this case is not dismissed for *forum non*

*conveniens*, the conflict must be resolved to determine which law the Court will apply to the

eminently Mexican dispute giving rise to this case.

### III.    This Court has routinely held that disputes analogous to this one should be litigated in Mexico.

At pages 11-12 of Perforadora's original Memorandum in Support, it cited five cases from

this Court that had dismissed on *forum non conveniens* grounds cases that involved torts committed

in Mexico. All of these cases held essentially that, "It would be the height of presumption to insist

on the 'parochial concept that all disputes must be resolved under our law and in our courts,' and

anything short of American justice is inadequate." *E.g., Seguros Commercial Americas, S.A. de C.V.*

*v. American President Lines, Ltd.*, 933 F.Supp. 1301, 1309 (S.D.Tex. 1996), *quoting Neo Sack, Ltd.*

*v. Vinmar Impex, Inc.*, 810 F.Supp. 829, 834 (S.D.Tex. 1993)(citations omitted).

SSI grudgingly concedes the adequacy of the Mexican forum at page 14 of its Response,

although it still complains that, "... as a practical matter, Mexico is not an available forum due to cost

constraints." (Response, p. 13). This very complaint, of course, was specifically rejected in

---

[1] *See also, Symonette Shipyard v. Clark*, 365 F.2d 464, 468 (5th Cir. 1966), relied upon by SSI,
(U.S. law applied to U.S. seaman because, among other things, "...evidence relating to the law of
Bahamas was vague and indefinite.")

4

*Gonzalez v. Chrysler Corp.*, 301 F.3d 377 (5th Cir. 2002), *cert. denied,* 71 USLW 3489, 2003 WL

133001 (U.S. 2003), holding that it would be "inappropriate -- even patronizing" for a U.S. court to

let such complaints stand in the way of the otherwise proper jurisdiction of Mexican courts.  301

F.3d at 381-82.

Shortly after Perforadora filed its *forum non conveniens* motion, the Fifth Circuit affirmed

another case in which a Texas federal court, in a suit arising from an accident in Mexico, had

deferred to the courts of Mexico on *forum non conveniens* grounds.  Respecting the public interest

choice-of-law factor, the court of appeals observed:

> ...Were we to apply Texas law as a means of righting any perceived
> inequities of Mexican law, we would be undercutting Mexico's right
> to create a hospitable climate for investments.  Uniformity,
> predictability, and accommodation of the competing policies of the
> two nations favor applying Mexican law.

*Vasquez v. Bridgestone/Firestone, Inc.,*2003 WL 1389087 *9, ____ F.3d ____ (5th Cir. 2003), citing,

*Gonzalez,* at 301 F.3d , 381-82 (deferring to Mexico's policy choice of limiting tort law damages

so as to balance other economic and cultural values).

True, these Southern District of Texas cases were not maritime cases, and several of them

involved Mexican, rather than American, plaintiffs.  But all six of these cases recognized the

propriety of deferring to Mexican courts when the tort occurs in Mexico and Mexican interests are

predominantly involved.

The fact that the plaintiff is a U.S. corporate citizen does not, as SSI suggests, prevent

dismissal for *forum non conveniens,* nor does it prevent the application of Mexican law to the tort.

SSI misleadingly suggests that *Neely v. Club Med Management Services, Inc.*'s application of U.S.

law to a St. Lucia accident turned on "the 'overriding interest' of the U.S. in assuring adequate

compensation for **its residents and domiciliaries**." (Response, p. 24, emphasis added, citing *Neely* at 63 F.3d 171-72). What *Neely* actually said, however, was that, "the United States has an overriding interest in assuring adequate compensation for its **injured seamen**." *Neely*, 63 F.3d at 171 (emphasis added.)

The plaintiff in *Neely*, was, of course, an American seamen, one of the "wards of admiralty." See, *e.g.*, *O'Donnell v. Great Lakes Dredge and Dock Co.*, 318 U.S. 36, 40, 63 S.Ct. 488, 490-91 (1943); *Garrett v. Moore McCormack Co.*, 317 U.S. 239, 246-47, 63 S.Ct. 246, 251-52 (1942). Because of the "special solicitude" afforded American seamen by the Jones Act and general maritime law, these laws have sometimes been applied to seamen injured in foreign territorial waters. *Neely*, 63 F.3d at 185, n. 17; *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1136, n. 27 (5th Cir. 1995). But even American seamen will be denied the benefits of U.S. law if the *Lauritzen - Rhoditis* analysis leads to the application of another country's law. *Fogleman v. ARAMCO*, 920 F.2d 278 (5th Cir. 1991). *See also, Bilyk v. The Vessel Nair*, 754 F2.d 1541 (9th Cir. 1985).

Courts have dismissed on *forum non conveniens* grounds claims of other kinds of American plaintiffs claiming injuries in foreign countries. For instance, in *Dunham v. Hotelera Canco S.A. de C.V.*, 933 F.Supp. 543 (E.D.Va. 1996), an American vacationer was injured at a Mexican resort, but sued the resort in a Virginia court. The Virginia court applied the *Gulf Oil* analysis and dismissed the case for *forum non conveniens.*

Similarly, in *Mercier v. Sheraton International, Inc.*, 935 F.2d 419 (1st Cir. 1991), the district court dismissed a non-seaman's case on *forum non conveniens* grounds. Although the Second Circuit remanded the case for additional factual inquiry, it held that the American plaintiffs' misgivings about the Turkish justice system's perceived inadequacies were insufficient to defeat the

6

motion. On remand, the motion to dismiss for *forum non conveniens* was again granted, and that decision was affirmed by the First Circuit. *Mercier v. Sheraton International, Inc.*, 981 F.2d 1345 (1st Cir. 1992). *See also, Feinstein v. Curtain Bluff Resort*, 1998 WL 458060 (S.D.N.Y. 1998), and cases cited therein.

## IV.    The *Gulf Oil v. Gilbert* analysis requires dismissal

Perforadora will not repeat the analysis of the *Gulf Oil v. Gilbert* factors, which occupies most of its original Memorandum in Support, other than to observe that SSI's argument respecting the private interest factors appears to rest on the assumption that SSI will be able to control how Perforadora defends the case at trial. But independent of SSI's views on the necessity of certain witnesses' testimony, Perforadora will seek to call whom it chooses and, contrary to SSI's assertion, will seek to call as many live witnesses as possible, as opposed to simply submitting their depositions. Since virtually all of Perforadora's witnesses are Mexican, their testimony will be more accurate and understandable if given in their, and the fact-finder's, first language. Finally, a thorough analysis of the criminal proceeding against Quantum, which tied up SSI's equipment throughout most of the period during which SSI was unable to retrieve it, will be necessary to Perforadora's case, and most of the voluminous record of that proceeding has not been translated into English.

SSI also argues that it would be convenient for Perforadora to litigate this case in the United States because Perforadora has brought other suits in United States federal courts sitting in Louisiana and Texas (Response, p. 7). The first two suits (in one of which Perforadora was a defendant) involved contracts made and performed in the United States. Perforadora brought each of the other suits against American flag vessels in their home ports or their owners' principal places of business. Contrary to SSI's argument, Perforadora never contended in the M/V ROSIE case or in any other

case that United States admiralty law should be applied to a maritime tort that occurred in Mexico's

territorial waters.

The public interest factors point to Mexico with even greater force. Simply put, the interests

of a Texas court in protecting the interests of a Louisiana corporation doing business in Mexico are,

to paraphrase the *Dunham* court,

> "...**secondary to the interests of Mexico in this action**. Mexico has
> **an interest in providing a safe haven** for [foreign companies who
> work in its territorial waters]. It also has a **strong interest in
> determining how to assess liability** against any of its citizens who
> may be responsible for [an economic injury to such a company]. The
> case involves [a Mexican defendant accused of a conversion that
> occurred wholly in Mexico]. As noted above, most of the witnesses
> and evidence are also in Mexico. The action, therefore, can be
> characterized as a **"localized controversy"** of a type the *Gulf Oil*
> court stated **should be decided "at home."**

*Dunham*, 933 F.Supp. at 555 (emphasis added, citations omitted). Additionally, while plaintiff is

incorporated in the U.S., it is not a Texas citizen, which renders local interest in the case "almost

nonexistent." *Agyenkwa v. American Motors Corp.*, 622 F.Supp. 242, 247 (E.D.N.Y. 1985);

*Feinstein v. Curtain Bluff Resort, supra.*

## V.    Analysis of the *Lauritzen* factors requires the application of Mexican law

Again, Perforadora will not repeat its listing and analysis of all of the *Lauritzen* factors

discussed at pages 20-26 of its original Memorandum in Support, but will respond to a few of the

points urged in SSI's Response.

Preliminarily, it should be recalled that, according to the *Neely* case, upon which SSI so

heavily relies,

> ...[T]he **first aim** of the *Lauritzen* analysis is to assure that American
> maritime law is **not** applied to incidents that lack any significant
> American connection.

8

> The **second, related purpose** of the analysis is to **resolve and avoid conflicts with the maritime laws of other nations.**[12]   See *Lauritzen*, 345 U.S. at 552, 73 S.Ct. at 928.  To this end, the Court invoked a presumption that in the absence of specific direction to the contrary, statutes of Congress would not be interpreted as to violate international law.  See, 345 U.S. at 577, 581, 73 S.Ct. at 926, 927-28.

63 F.3d at 181 (emphasis added).  The court in *Neely* went on to observe in footnote 12:

> The two identified purposes are not unrelated, for if American law were held to apply in situations where the United States has no appreciable interest, it would invite other nations to construe their laws in similar fashion, *cf. Lauritzen*, 345 U.S. at 582, 73 S.Ct. at 928 (discussing reciprocity concerns), inevitably escalating the number of true conflicts and international maritime context to an unacceptably high level.

*Id.* at n. 12.  Similarly, in deciding this motion, the Court should consider whether a Mexican court would be justified in exercising jurisdiction and applying Mexican law to the case of a Mexican plaintiff injured by tortious conduct that occurred entirely in the State of Texas.

In its *Lauritzen* analysis, SSI characterizes the place of the wrongful act as a "minor" factor (Response, p. 22), quoting *Lauritzen*'s observation that it "is of limited application to shipboard torts because of the varieties of legal authorities over waters [the ship] may navigate." *Lauritzen*, 345 U.S. at 583, 73 S.Ct. at 929.  In this case, however, there was no navigation of the waters of a variety of different jurisdictions.  The only activity on which SSI can possibly base its argument for the application of any country's maritime law was the alleged seizure aboard the DON FRANCISCO while it was docked in Mexican territorial waters; any other allegedly wrongful acts by Perforadora occurred on Mexican land.  Thus, the place of the tort should not be relegated to the jurisprudential dust-bin, as suggested by SSI.  Instead, in a "non-traditional" case like this one, which does not involve an injury to a seaman aboard a vessel engaged in traditional maritime commerce, the place of the wrong assumes primary importance.

In non-traditional contexts, however, the vessels at issue do not ply the waters of multiple seas. It may be predicated at the outset that **any injuries will likely occur, non-fortuitously, in the locale where the vessel is stationed**. Thus, the justified expectations would not be thwarted if the **place of the act were considered a significant choice-of-law factor**. See *e.g. Fogleman* [*v. ARAMCO*], 920 F.2d [278] at 282 ("When the injury stems from work on a permanently situated offshore oil rig or work platform, however, the place of the wrong assumes greater importance.")

*Neely*, 63 F.3d at 191 (emphasis added). *See also, Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1120 (5th Cir. 1995)("...because this is a nontraditional maritime case, this factor [place of the wrongful act] is entitled to considerable weight.")

The law of the place of the wrong also assumes heightened importance in a case seeking punitive damages because the place of the wrong has the most interest in punishing and deterring wrongful conduct in its territory. *In re Aircrash Disaster Near Chicago*, 644 F.2d 594, 612 (7th Cir. 1981):

> The [plaintiffs'] domiciliary states do not have an interest in disallowing punitive damages because the decision to disallow such damages is obviously designed to protect the interest of resident defendants, not to effectuate the interest of the domiciliary states in the welfare of plaintiffs...Nor do the domiciliary states have an interest in imposing punitive damages on the defendants. The legitimate interests of these states, after all, are limited.

Thus, "...[T]he question of punitive damages is of primary interest to the jurisdiction having some link to the defendant." *In re Korean Airlines*, 932 F.2d 1475, 1499 (D.C. Cir. 1991).

SSI contends that another important factor, the law of the flag, is of "little relevance." Response, p. 23. In *Coats v. Penrod Drilling Corp., supra,* however, the Fifth Circuit noted that,

> The second factor is the law of the flag. 'The **law of the flag has traditionally been of cardinal importance** in determining the law applicable to maritime cases.' [*Fogleman*, 920 F.2d at 282] (*citing, Lauritzen*, 345 U.S. at 583-84, 73 S.Ct. at 928-29).

10

61 F.3d at 1120 (emphasis added). *Lauritzen* characterized the law of the flag as perhaps the "most venerable and universal rule of maritime law relevant to our problem."

> This Court has said that the law of the flag supercedes the territorial principle, even for purposes of criminal jurisdiction of personnel of a merchant ship, because it "is deemed to be a part of the territory of that sovereignty [whose flag it flies], and not to lose that character when in navigable waters within the territorial limits of another sovereignty..." *United States v. Flores*, 289 U.S. 137, 155-159, 53 S.Ct. 580, 584-586....

345 U.S. at 584-85, 73 S.Ct. at 929-30; see also *Klinghoffer v. S.N.C. Achille Lauro*, 795 F.Supp. 112, 115 (S.D.N.Y. 1992).

Here, SSI claims to have initially been deprived of its property by actions that occurred aboard a Mexican flagged vessel. Even if the vessel had not been docked in Mexican territorial waters, the alleged actions of the vessel's master on board would have been deemed to have occurred within Mexican territory and, of course, been subject to Mexican law.

SSI, on the other hand, attributes major importance to the law of the forum, again misleadingly citing the United States's "overriding interests" in assuring adequate compensation to its **residents and domiciliaries**, whereas the case law actually limits that interest to the protection of **seaman**. SSI ignores *Lauritzen*'s pronouncement that,

> Jurisdiction of maritime cases in all countries is so wide and the nature of its subject matter so far-flung that there would be no justification for altering the law of a controversy just because local jurisdiction of the parties is obtainable.

345 U.S. at 591, 73 S.Ct at 932.

In *Klinghoffer, supra,* the court noted that this factor and the inaccessibility of the foreign forum "...do not operate to bring under American law the governance of the attack upon an Italian vessel in Mediterranean waters." 795 F.Supp. at 116. The *Klinghoffer* court held Italian law

11

applicable. In this case, we are here only because of the fortuitous and unrelated fact that SSI was able to find Perforadora's property in this district. Thus, neither forum law nor the fictive inaccessibility of Mexican courts would support a declination to defer to courts and the law of Mexico.

Finally, at page 24 of its response, SSI again attempts to leverage its Louisiana corporate citizenship into the equivalent of seaman's status. But SSI's U.S. domicile, which is the only relevant contact this case has with the United States, should be given little or no weight under these circumstances. See *Dunham* and the other cases cited above at page 8. In *Mizokami Bros. of Arizona, Inc. v. Baychem Corp.*, 556 F.2d 975 (9th Cir. 1977) (per curiam) *cert denied.*, 434 U.S. 1035 (1978), the court upheld dismissal on *forum non conveniens* grounds of an American plaintiff's suit against an American defendant whose chemical had contaminated products purchased by the plaintiff in Mexico. The Ninth Circuit observed:

> The plaintiff falls back on its United States citizenship as the sole and only possible basis for suing these defendants in a court of the United States. This is **not enough. In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation, they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.**

556 F.2d at 978 (emphasis added); *see also, Mercier, supra*, 981 F.2d at 1351; *cf., Cuba R. Co. v. Crosby*, 222 U.S. 473, 480, 32 S.Ct. 132, 133 (1912), upholding application of foreign law to a foreign tort;

> ...[I]t should be remembered that parties do not enter into civil relations in foreign jurisdictions in reliance upon our courts. They could not complain if our courts refused to meddle in their affairs and remitted them to the place that established and would enforce their rights.

The force of these pronouncements in *Mizokami Bros.* and *Crosby* has only increased since the times of those decisions.

**VI.    The United States lacks prescriptive jurisdiction over actions
that occurred wholly within the sovereign territory of Mexico**

Prescriptive, or legislative, jurisdiction is the authority of a state to make its law applicable to particular conduct, relationships, or status.[2] In *The Apollon*, 22 U.S. 362, 9 Wheat 362 (1824), Justice Story wrote that "the extraterritorial assertion of U.S. [prescriptive] jurisdiction would be openly at variance with the independence and sovereignty of foreign nations" and that such jurisdictional claims had "never yet been acknowledged by other nations and would be resisted by none with more pertinacity than by the Americans." 22 U.S. at 370.

U.S. courts have long presumed that Congress does not intend its enactments to violate international law. *Murray v. Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1904). As later formulated, this "territoriality presumption" provided that, "Legislation of Congress, **unless a contrary intent appears**, is meant to apply only within the territorial jurisdiction of the United States. *Foley Bros. Inc. v. Filardo,* 336 U.S. 281, 285, 69 S.Ct. 575, 578, (1949)(emphasis added); *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 21-22, 83 S.Ct. 671, 677-78 (1963).

This territoriality presumption was reaffirmed in uncompromising terms in *American Banana Co. v. United Fruit Co.*, 213 U.S. 347, 29 S.Ct. 511 (1909). Considering whether the Sherman

---

[2] See Restatement (3rd) Foreign Relations Law Section 401 (1987) ("... authority to make its law applicable to the activities, relations, or status of persons, or the interests of persons and things, whether by legislation, by executive act or order, by administrative rule or regulation, **or by determination of a court**"). See, *Neely, supra,*63 F.3d. at 184 ( noting the significant difference between subject matter jurisdiction and prescriptive jurisdiction); and *Sevinson v. Cruise Ship Tours, Inc.*, 1997 U.S. Dist. Lexis 12728, *23 ( D.C. V.I. 1997).

Antitrust Act, 15 U.S.C. § 1 *et seq.,* should be applied to conduct in Costa Rica and Panama, Justice

Holmes opined:

> But the general and almost universal rule is that **the character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done**. *Slater v. Mexican Nat. R. Co.,* 194 U.S. 120, 126 ( 1904). For another jurisdiction, if it should happen to lay hold of the actor, to treat him according to its own notions rather than those of the place where he did the acts, **not only would be unjust, but would be an interference with the authority of another sovereign, contrary to the comity of nations**, which the other state concerned justly might resent. (Citing, *Phillips v. Eyre,* L.R. 4 Q. B. 225, 239.) A threat that depends upon the choice of the party affected to bring himself within that power hardly would be called law in the ordinary sense.

213 U.S. at 356, 29 S.Ct. at 512. The reach of the Sherman Act was later extended to extraterritorial

actions that are intended to affect and do substantially affect United States commerce, *United States*

*v. Aluminum Co. of America,* 148 F.2d 416 (2d Cir. 1945), which is also consistent with

international law. See, Restatement of the Law of Foreign Relations of the United States, Third,

Section 402(1)(c) (substantial territorial effects justify extraterritorial extension of prescriptive

jurisdiction).

In *Lauritzen,* the Supreme Court refused to apply the Jones Act to an injury sustained by a

foreign seaman in foreign territorial waters despite the Act's broad language, which would literally

apply to any seaman anywhere in the world. *Lauritzen* understood "prevalent doctrines of

international law," to require the ascertainment and valuing of "points of contact between the

transaction and the states or governments whose competing laws are involved." 345 U.S. at 577,

582, 73S.Ct. at 926, 928. The Court reasoned that international law principles have "...the force of

law, not from extraterritorial reach of national laws, nor from abdication of its sovereign powers by

14

any nations, but from acceptance by common consent of civilized communities of rules designed to foster amicable and workable commercial relations." 345 at 581-582, 73S.Ct. at 928.

In *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468 (1959), the Supreme Court further narrowed the reach of the Jones Act and general maritime law, holding that neither provided a remedy for a foreign seaman against a foreign owner for an injury caused by negligence committed in U.S. territorial waters, but aboard a foreign flag vessel. 358 U.S. at 384., 79 S.Ct. at 486.

> ...[I]n the absence of a contrary congressional direction, we must apply those principles of choice of law which are consistent with the needs of a general federal maritime law and with due recognition of our self-regarding respect for the relevant interests of foreign nations in the regulation of maritime commerce as part of the legitimate concern of the international community.

358 U.S. at 382-383, 79 S.Ct. at 486. The Court has more recently reconfirmed the presumption against extraterritorial application of U.S. law. *See*, *Sale v. Hashien Centers Counsel, Inc.*, 509 U.S. 155, 133S.Ct. 2549 (1993); *Smith v. U.S.*, 507 U.S. 197, 113S.Ct. 1178 (1993).

Some courts have gone so far as to hold (in non-seaman cases) that general U.S. maritime law does not extend to the territorial waters of other nations, but is limited to United States territorial waters and the high seas. *See, Dunham v. Hotelera Canco S.A. de C.V.*, 933 F.Supp. 543, 547 (E.D.Va. 1996), *citing Victory Carriers, Inc. v. Law*, 404 U.S. 202 , 205, 92 S.Ct. 418, 421-22 (1971), and *Sharma v. Skaarup Ship Management Corp.*, 699 F.Supp. 440, 448 (S.D.N.Y. 1988)(declining to extend admiralty jurisdiction to a tort alleged to have occurred in British Columbia), *aff'd*. 916 F.2d 820 (2d Cir. 1990), *cert. denied*, 499 U.S. 907, 111 S.Ct. 1109 (1991).

SSI cites cases such as *Neely* in which federal courts have asserted prescriptive jurisdiction and applied U.S. law to events that occurred abroad and involved foreign defendants. Each of these

cases, however, also involved maritime personal injuries to American seamen, who invoked the Jones Act.[3] But, as discussed above, there is a fundamental difference between Jones Act cases and general maritime law claims like SSI's suit for conversion: extraterritorial application of the Jones Act is supported by an explicit and well articulated Congressional policy for the extension of prescriptive jurisdiction in cases involving the "wards of admiralty." Congress has now expressly limited the benefits of the Jones Act to American seamen. 46 U.S.C. § 688(b) (1988). *Coats v. Penrod Drilling Corp.,supra*, limited judicial jurisdiction to claims for personal injury, declining to extend it to claims for property damage. 61 F.3rd at 1119; *see also, Sohyde Drilling and Marine Co. v. Coastal Gas Producing Co.*, 644 F.2d 1132, 1136-1137 (5th Cir. 1981)). But there is still a clear Congressional policy supporting extraterritorial application of this law to personal injuries incurred by American seaman.

Thus, where Congress has explicitly asserted its intention to extend a particular law like the Jones Act to protect a class of U.S. citizens suffering personal injuries outside the territorial boundaries of the United States, the courts will give effect to that intent.[4] And, although Congress may enact laws proscribing extraterritorial conduct that has or is intended to have a substantial effect within the United States, it may not regulate such conduct "when the exercise of . . . jurisdiction is

---

[3]*See,* the discussion of the prescriptive jurisdiction test in *Neely*, 63 F.3d at 186. As noted above, *Neely* also found it important that the defendant failed to provide any information about the law of the place of the tort. 63 F.3d at 190.

[4]*Cf., EEOC v. Arabian American Oil Co. ("ARAMCO")*, 499 U.S. 244, 111 S.Ct. 1227 (1991), affirming the Fifth Circuit's decision that Title VII does not apply extraterritorially to regulate United States companies' employment of United States citizens abroad, and noting that plaintiffs have the burden to present sufficient evidence that Congress intended extraterritorial application of the statute. 499 U.S. at 250, 111 S.Ct. at 1231. The Supreme Court also observed that, while Congress has the power to enforce its law beyond territorial boundaries, the relevant question is whether Congress had in that particular instance done so. 499 U.S. at 248, 111 S.Ct. at 1230.

unreasonable". See *United States v. Javino*, 960 F.2d 1137, 1142-43 (2ⁿᵈ Cir. 1992); *United States v. Baker*, 609 F.2d 134, (5ᵗʰ Cir. 1980).

Thus, SSI's reliance on *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 113 S.Ct. 2891 (1993) is also misplaced. The federal antitrust laws specifically apply to actions outside of the United States that substantially injure competition in the United States. *See*, 15 U.S.C. § 6(a); *United States v. Aluminum Co. of America*, 148 F.2d 416 (2d Cir. 1945) and its progeny. In the *Hartford Fire Ins. Co.* case itself, the court held: "[I]t is well established by now that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some **substantial effect** in the United States..."(emphasis added).

SSI argues that because its business has been damaged by Perforadora's alleged conversion, there has been such an effect on U.S. commerce. But this is not the kind of "effect" that will trigger Sherman Act coverage or otherwise justify the extraterritorial application of U.S. law. Even if SSI had alleged an antitrust violation (which, of course, it has not), the "effects" test would not have been met. Courts have uniformly rejected claims where the antitrust plaintiff's injury occurred in the absence of an adverse effect on competition. *See, e.g., Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 486 (D.C. Cir. 1996) (Injury to one competitor does not equal injury to competition); *Levine v. Central Florida Med. Affiliates*, 72 F.3d 1538, 1551 (11ᵗʰ Cir.), *cert. denied*, 117 S.Ct. 75 (1996)(reiterating that, "The antitrust laws are intended to protect competition, not competitors"). Thus, the supposed injury to SSI's business cannot be regarded as a substantial effect on U.S. commerce, and there is no other basis for the exercise of U.S. prescriptive jurisdiction over the extraterritorial conduct of the Mexican company that allegedly inflicted the injury in Mexico.

Congress has never prescribed the extraterritorial application of United States law for either conversion claims or punitive damage claims. Nor has Congress ever given any indication that a

17

special need exists to protect American commercial interests abroad from the type of economic

injury claimed by SSI. To presume otherwise would contradict the foregoing principles of both

international and domestic law.

## VII. Comity, predictability and fairness also require deference to Mexican courts and law

Even if it could be said that the United States had prescriptive jurisdiction to punish a

Mexican tort, the principle of comity would discourage the exercise of such jurisdiction in a case like

this. "Comity serves our international system like the mortar which cements together a brick house.

No one would willingly permit the mortar to crumble or be chipped away for fear of compromising

the entire structure." *Laker Airways v. Pan American World Airway,* 731 F.2d, 909, 937 (D.C. Cir.

1984). "Comity is essentially a version of the golden rule:'A concept of doing to others as you

would have them do to you.'" *Republic of the Philippines v. Westinghouse Electric Co.,* 43 F.3d 65,

75 (3rd Cir. 1994).

Cases reflecting the respect due co-equal sovereigns under international law are numerous

and include personal injury cases like *Gonzalez v. Chrysler Corporation, supra,* and *Dunham v.

Hotelera Canco S.A. de C.V., supra. See also, Harris v. Polskie Linie Lotnicze,* 820 F.2d 1000 (9th

Cir. 1987), in which the California parents of a passenger killed in an airplane crash in Poland

brought a wrongful death suit against the Polish airline. The Ninth Circuit held that Polish law, and

not California law, applied to determine wrongful death damages. In *Tramontana v. S.A. Empresa

de Viacao Aerea Rio,* 350 F.2d 468, 471 (D.C. Cir. 1965), the court applied a Brazilian wrongful

death award limitation of $170.00 to a U.S. citizen killed in a mid-air collision over Brazil, pointing

to the paucity of interest on the part of the forum and to Brazil's clear interest in the application of

its damage limitation to accidents within its territory.

18

Predictability is a venerable guidepost in choice-of-law analysis *J. Beale,* Treatise on the Conflicts of Law, §4 (1935); *Crosby, supra; Mizokami Bros., supra.* In *Vasquez, supra,* predictability was cited as one of the factors justifying the application of Mexican law to product liability claims arising from an accident in Mexico. 2003 WL 1389087 *9.

SSI and Wolfgang Burnside should have known that their disputes in Mexico, at least those with non-contracting parties, would be governed by Mexican law, *Mizokami Bros., supra.* On the other hand, Perforadora had no reason whatsoever to suspect that its handling of SSI's property at the dock in Dos Bocas, Mexico, and at its warehouse in Carmen, Mexico, might be adjudicated according to U.S. admiralty law or in a U.S. court. Certainly, Perforadora had no basis to expect that SSI would seek not only compensation but also punitive damages through the application of the United States general maritime law.

Another justification for deferring to foreign law, of course, is fairness. As stated in the *American Banana* case, 213 U.S. 347, 29 S.Ct. 511 (1909), "For a jurisdiction, if it should happen to lay hold of the actor, to treat him according to its own notions rather than those of the place where he did the act. . .would be unjust." 213 U.S. at 356.

19

## CONCLUSION

The United States's interest in respecting the laws of a co-equal sovereign, considerations of predictability and fairness, as well as the overriding interest of Mexican nationals to be judged by laws duly created by the prescriptive jurisdiction of Mexico to address unlawful conduct occurring within Mexico's borders, require the dismissal of this case for *forum non conveniens*. At the very least, these considerations mandate the application of Mexican law in this case.

OF COUNSEL:

ROYSTON RAYZOR VICKERY
   & WILLIAMS L.L.P.

Respectfully submitted,

KEITH UHLES (Tex Bar No. 20371100)
(S.D. Tex. No. 1936)
55 Cove Circle
Brownsville, TX 78523-3509
Telephone:  (956) 542-4377
Facsimile:  (956) 542-4370

MILLING BENSON WOODWARD L.L.P.

JAMES K. IRVIN (#7166)
BENJAMIN O. SCHUPP (#21074)
SERGIO J. ALARCON (#24740)
909 Poydras Street, Suite 2300
New Orleans, LA  70112-1010
Telephone:  (504) 569-7000
Facsimile:  (504) 569-7001

Attorneys for Perforadora Central S.A. de C.V.

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **Reply Brief in Support of Motion to Dismiss for Forum Non Conveniens** has been served upon all counsel of record by depositing same in the United States Mail, first class postage prepaid and properly addressed, this _12th_ day of May, 2003.

/wp299467(.81928)