United States District Court
Southern District of Texas
FILED

JUN 17 2003

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SUBMERSIBLE SYSTEMS, INC. | § § | |
| VS | § § | C.A. NO. B-03-020 |
| PERFORADORA CENTRAL, S.A. de C.V. | § | RULE 9(h) ADMIRALTY |

## MEMORANDUM CONCERNING CHOICE OF LAW ISSUE

MAY IT PLEASE THE COURT:

Plaintiff, Submersible Systems, Inc. ("Submersible"), submits this memorandum in accord with the Court's instructions at the May 23, 2003 hearing. Submersible first calls this Court's attention to Perforadora's own suits filed in this Court and other U.S. courts requesting the application of U.S. maritime law for torts which occurred on Mexican territorial waters and involved Mexican flagged vessels and/or companies.[1] Perforadora cannot credibly argue that U.S. law applies those actions when it is the plaintiff, but not here when it is the defendant. Perforadora's arguments are often a matter of convenience and are inconsistent with its previous actions.[2] Further,

---

[1] See Submersible's Response to Motion to Dismiss at p. 7 and Exhibit "B" to same; see Submersible's Surreply at pp. 1-2 and Exhibit "M" to same.

[2] Attached hereto as Exhibit "P-1" and "P-2" are two pleadings filed by Perforadora in the M/V ROSIE suit, which it filed in Louisiana for a tort which occurred in Mexican territorial

1

in this case. Perforadora has attempted to invoke the U.S. Limitation of Liability Act, 46 U.S.C.A. §183, *et seq.*[3] These facts should preclude any further inquiry into choice of law. However, even when the choice of law issue is examined, it is clear that U.S. maritime law applies to this case.

### *No Choice of Law Analysis is Necessary*

There is no question that admiralty jurisdiction exists in this case. The Fifth Circuit has so held. *Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 420 at n. 3 (5th Cir. 2001) (finding Perforadora's arguments that U.S. admiralty jurisdiction does not apply were "without merit.") With admiralty jurisdiction comes the application of substantive U.S. admiralty law. *See Yamaha Motor Corp. v Calhoun*, 516 U.S. 199, 206 (1996); *Jerome B. Grubart, Inc. v. Great Lakes Dredge and Dock Co.*, 513 U.S. 527, 544 (1995). Perforadora cites no cases to the contrary. However, Perforadora suggests that (a) U.S. general maritime law should not apply, because Congress has not determined that it should be applied extraterritorially, and (b) Submersible's statement that, with U.S. admiralty jurisdiction comes U.S. admiralty law proves too much, otherwise the *Lauritzen/Rhoditis*[4] choice of law analysis would never have been developed. Perforadora's argument that U.S. law cannot be applied extraterritorially unless Congress has

---

waters. (See Exhibit "B" to Submersible's Response.) In P-1, the witness list, Perforadora lists numerous Mexican witnesses it will call live or by deposition; in P-2, it confirms that discovery will take more time because the events occurred in Mexico and involved Spanish speaking witnesses and Spanish documents, but merely seeks additional time to conduct discovery.

[3] See, Perforadora's Twenty Third Defense.

[4] *Lauritzen v. Larson*, 345 U.S. 571 (1953); *Hellenic Lines v. Rhoditis*, 398 U.S. 306 (1970).

2

expressly required it does not comport with longstanding maritime law. Historically, U.S. maritime law has been applied to not only to the territorial waters of the United States, but also to the high seas and "arms of the sea, waters flowing from it into ports and havens, and as high upon rivers as the tide ebbs and flows." *Waring v. Clarke*, 46 U.S. (5 How.) 441, 462 (1847). See also *The EAGLE*, 75 U.S. (8 Wall.) 15, 20-1 (1868), *Canada Malting Co v Patterson Steamships*, 285 U.S. 413 (1932), Grant Gilmore and Charles Black, Jr., The Law of Admiralty, Section 19 at 51-2 (2nd Ed. 1975) ("The courts of the United States take jurisdiction, subject to some reservation imposed by their own application of the doctrine of *forum non conveniens*, of suits on maritime claims arising out of transactions and occurrences anywhere in the world") (footnotes omitted).

In the recent Fifth Circuit case of *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113 (5th Cir. 1995) (*en banc*), the Court applied the general maritime law to a case arising out of a tort in the territorial waters of United Arab Emirates. Contrary to the statements of Perforadora's counsel, the plaintiff in *Coats* was not a Jones Act seaman with respect to the defendant; hence, liability was not premised on the Jones Act, 46 U.S.C.A. § 688, but instead under the general maritime law. Thus, Perforadora's arguments concerning the extraterritorial application of U.S. maritime law is simply wrong.

Secondly, *Lauritzen* and *Rhoditis* assumed conflicts between U.S. and foreign law. Hence, the Supreme Court did not engage in any significant discussion regarding whether a conflict existed. In this case, however, there is a great dispute concerning whether there is a conflict between the laws of the United States and Mexico which would implicate comity concerns. For that reason, the Court

must first address whether there is a true conflict.

Submersible, of course, disagrees with Perforadora's concept of comity and its choice of law analysis. Specifically, Perforadora ignores:

> The principle that comity has never meant categorical deference to foreign proceedings. It is implicit in the concept that deference should be withheld where appropriate to avoid the violation of the laws, public policies, or rights of the citizens of the United States. See *Pravin Banker Assocs. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2nd Cir. 1997) (comity should not be extended "when doing so would be contrary to the policies or prejudicial to the interests of the United States"); *Victrix S.S. Co. v Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2nd Cir. 1987) ("Federal courts generally extend comity whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of the United States citizens or violate domestic public policy."); *Cunard S.S. Co.*, 773 F.2d at 457 ("Comity will be granted . . . if . . . the laws and the public polices of the forum state and the rights of its residents will not be violated"); *In re Schimmelpenninck*, 183 F.3d 347, 365 (5th Cir. 1999) ("foreign laws . . . must not be repugnant to our laws and policies"). *In re Treco*, 240 F.3d 148, 157 (2nd Cir. 2001).

However, this Court need not reach those arguments because there is no true conflict between U.S. and Mexican law regarding conversion.

After deciding that U.S. jurisdiction applies but before addressing comity or performing a conflict of law analysis, a court must determine that there is a "true conflict" between U.S. law and foreign law. *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 798-799, 113 S.Ct. 2891, 2910-11 (1993); *United International Holdings, Inc. v Wharf (Holdings), Ltd.*, 210 F.3d 1207, 1223 (10th Cir. 2000), *aff'd*, 532 U.S. 588 (2001); *In re Maxwell Communication Corp.*, 93 F.3d 1036, 1049-50 (2nd Cir. 1996). "No conflict exists, for these purposes, 'where a person subject to regulation by two states can comply with the laws of both.'" *Hartford*, 509 U.S. at 799.

U.S. maritime law provides a civil remedy for wrongful conversion of property. See,

4

*Goodpasture, Inc. v. M/V POLLUX*, 602 F.2d 84, 87 (5th Cir. 1979), *cert. denied*, 460 U.S. 1084 (1983). According to Perforadora, Mexico also provides "a civil cause of action for conversion of property and a remedy . . ." See, Affidavit of Carlos Loporena-Ruiz at ¶ 7 (attached to Perforadora's Motion to Dismiss on the Ground of *Forum Non Conveniens*). The difference between U.S. and Mexican law is loss of use and punitive damages. Under Mexican law, loss of use is recoverable if there is a written contract in place. Under U.S. law, no such contract is required. The difference, therefore, is not in the type of damages available, it is in the elements of proof necessary to support such an award.[5] Slightly different evidentiary rules to prove an element of damages available under both Mexican and U.S. law certainly does not create a true conflict. Perforadora could easily have complied with both U.S. law and Mexican law and avoided liability entirely by not converting Submersible's equipment.[6]

Perforadora's argument that the evidentiary requirements to prove amount of damages, alone, creates a true conflict is inconsistent with its arguments regarding *forum non conveniens* and is contrary to *Hartford*. Perforadora claims that Mexico's limitation of damages does not render Mexico an inadequate forum and cites *Gonzalez v. Chrysler Corp.*, 301 F.3d 377 (5th Cir. 2002), as support for that proposition. Perforadora conversely argues that the difference in damages does

---

[5] Submersible also notes that U.S. law allows punitive damages and Mexican law may not. In a similar case, *Calhoun v. Yamaha Motor Corp.*, 216 F.3d 338, 347 (3rd Cir. 2000), the Third Circuit applied Pennsylvania law (the law of plaintiff's domicile) to the compensatory damage claim and Puerto Rican law (the law of the place of the tort) to the punitive damage claim.

[6] Even Perforadora's expert has admitted that its acts were illegal. See p. 10 of Exhibit "E" to Submersible's Response.

create a conflict. If a difference in damages does not render a forum inadequate, it cannot create a true conflict for choice of law analysis purposes. Further, the question is whether a party can legally comply with both laws at the same time, not whether a party may recover more in one forum. Here, Perforadora could have complied with both laws. Thus, no choice of law analysis is required, and the Court should apply U.S. law.

### *U.S. Maritime Law Applies under a Choice of Law Analysis*

Even if a choice of law analysis is performed, U.S. law clearly applies to this case. U.S. courts have applied the *Lauritzen-Rhoditis* analysis in determining what law should be applied to maritime personal injury cases and, in particular, Jones Act cases. Because this case does not involve a personal injury or the Jones Act, the *Lauritzen-Rhoditis* test is not directly applicable. *Gulf Trading & Transportation Co. v. The Vessel HOEGH SHIELD*, 658 F.2d 363, 366 (5th Cir. 1981). However, because the *Lauritzen-Rhoditis* test reviews many of the same factors as traditional choice of law analyses, it "presents a useful outline" for non-Jones Act cases. *Id.*

The *Lauritzen-Rhoditis* analysis is "not a mechanical" or mathematical analysis. *Rhoditis*, 398 U.S. at 308 (citing *Lauritzen*, 345 U.S. at 582). This is especially true in this non-Jones Act, non-personal injury case because some factors may be weighed more heavily in those cases but are not particularly important in conversion and property damage cases. Further, "[t]he significance of one or more factors must be considered in light of the national interest served by the assertion of [maritime tort] jurisdiction." *Rhoditis*, 398 U.S. at 309. The analysis here must be made in light of the national interest of protecting U.S. citizens and domiciliaries abroad. Submersible submits that

the factors of significance and applicable to the facts of this case point to the application of U.S. maritime law.

The first factor - the place of the wrongful act - is not particularly instructive in this case because, as the *Lauritzen* court explained, the place of the wrongful act "is of limited application to shipboard torts, because of the varieties of legal authority over waters she may navigate." *Lauritzen*, 345 U.S. at 583; see also *Quintero v. Klaveness Ship Lines*, 914 Fed. 2d 717, 722 (5th Cir. 1990), *cert denied*, 499 U.S. 925 (1991). Perforadora, of course, emphasizes this factor because it alleges that actual physical conversion took place on Mexican waters. However, Perforadora ignores the entire voyage of its vessel. The M/V DON FRANCISCO was dispatched from Mexico to Morgan City, Louisiana to pick up Submersible's personnel and equipment. The parties' relationship began in U.S. territorial waters, and, under Submersible's contract with Quantam, would end in U.S. territorial waters when the equipment and personnel would be returned in Morgan City.[7] The M/V DON FRANCISCO was not confined entirely to Mexican waters as Perforadora suggests. Perforadora could just as easily have converted the equipment on international or U.S. waters under the facts of this case. Thus, Perforadora's suggestion to ignore *Lauritzen*'s instruction not to overemphasize this factor simply because Perforadora decided to convert on Mexican waters is unsupported by the facts and the law. As *Lauritzen* made clear, this factor is of limited significance.[8]

---

[7]The last leg of the voyage obviously did not occur because Perforadora converted Submersible's equipment.

[8]Moreover, this factor is built upon an outdated premise which no longer obtains, *lex loci delicti*, *Lauritzen*, 345 U.S. at 583. Today, *lex loci delicti* has been almost universally discarded in favor of interest analysis. *See, generally*, RESTATEMENT (SECOND) OF CONFLICT OF LAWS.

Further, Perforadora certainly knew that the conversion of equipment would directly impact Submersible in the United States. Indeed, the place of injury was the United States, in whose waters Submersible could no longer ply its trade as a result of Perforadora's actions. Under these circumstances, the place of the wrongful act should be accounted little, if any, weight *vis a vis* the place where the damages occurred.

The second factor is the law of the flag.[9] This factor is of little relevance in the context of the conversion of property. Unlike *Lauritzen* (and virtually all of its progeny), this case does not involve a seaman under articles or otherwise, who voluntarily enters the employ of a ship owner to work on the latter's foreign-flagged vessel. Deference to the law of the flag extends to "only the vessel or those belonging to her." *Lauritzen*, 345 U.S. at 586, *citing U.S. v. Flores*, 289 U.S. 137, 158 (1933). Submersible and its employees did not sign on as crewmembers of the M/V DON FRANCISCO or otherwise "belong" to the vessel. Thus, the law of the flag is simply not instructive in this case.

The third factor is the domicile of the injured. It is undisputed that Submersible is domiciled in the U.S. Unlike the plaintiff in *Lauritzen* whose "presence in New York was transitory and created no such national interest in, or duty toward, him as to justify intervention of the law of one

---

[9] Piracy has been defined by the law of nations as "robbery or forcible deprivations upon the sea," *U.S. v. Smith* 18 U.S. (5 Wheat.) 153, 161 (1820). Moreover, a pirate cannot hide behind his flag, as the act of piracy renders him stateless and subject to punishment by all civilized nations. *U.S. v. Furlong*, 18 U.S. 184, 193 (1820). Insofar as Perforadora's wanton seizure and retention of Submersible's equipment constitute piracy, any choice of law analysis performed by this Court should ignore any contacts between Perforadora and Mexico, and consider only the law of the forum, the citizenship of Submersible and Submersible's choice of forum.

8

state on the shipboard of another." Submersible's presence in the United States is permanent and, consequently, creates significant interest in the application of U.S. law. *Lauritzen*, 345 U.S. at 587.

This factor takes on significant relevance in cases like this one where the U.S. must protect its citizens from harm abroad, especially when the foreign defendant regularly conducts business in the United States and takes advantage of its laws and protection. For instance, Perforadora has filed lawsuits in the U.S. seeking the benefit of U.S. law; it has secured government (MARAD) loans to construct at least two multimillion dollar rigs in the U.S.; it has bank accounts in the U.S.; and it regularly contracts with U.S. companies. This is not a case where neither the defendant nor the tort had any connection with the U.S. other than the plaintiff's domicile. Perforadora regularly takes advantage of U.S. laws and business opportunities. Perforadora's relationship with Submersible began when it picked up Submersible's equipment and personnel in U.S. territorial waters.

Submersible concedes the fourth factor to Perforadora - its allegiance is to Mexico. As with the place of the flag, this factor is of no, or limited, relevance under these facts.

No written contract existed between Perforadora and Submersible. However, Submersible's contract with Quantum was signed in Louisiana, required payment in Louisiana and provided for arbitration in Louisiana. See Exhibit "L" to Submersible's Response. The relationship and any duties and obligations between Submersible and Perforadora began in the United States.

The sixth factor - the inaccessibility of foreign forum - really applies in the context of *forum non conveniens*. See *Coats*, 61 F.3d at 1120. That motion is pending. Submersible, however, reiterates that due to cost constraints and the lengthy trial process (in addition to its previous efforts

in that system being thwarted by Perforadora). Mexico is not an available forum to it. Further, Mexico's laws do not provide it an adequate remedy.

As to the seventh factor, the law of the forum is the general maritime law of the United States. Perforadora's cursory analysis under Texas law is both incorrect and misplaced. There is no question that U.S. maritime law is the law of this forum. *Coats*, 61 F.3d at 1120.

When all the factors are examined in their respective importance with this case, it is clear that U.S. maritime law should apply. The U.S. has an overriding interest in assuring adequate compensation to its residents and domiciliaries, especially when the defendants has significant contacts with the U.S. *Neely*, 63 F.3d at 171-2. When significant U.S. interests are implicated, the application of U.S. law is reasonable under the circumstances. *Id.* at 182. Such a holding would comport with *Symonette Shipyards, Ltd. v. Clark*, 365 F.2d 464, 467 (5th Cir. 1966), *cert. denied*, 387 U.S. 908, 87 S.Ct. 1690, 16 L.Ed.2d 625 (1967) ("In the context of this case, we believe the most significant choice of law factor to be the nationality of the injured and deceased seaman."); see also, *Bailey v. Dolphin Int'l, Inc.*, 697 F.2d 1268, 1278, n. 25 (5th Cir. 1987), *rev'd on other grounds, In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 at 1164, n. 26 (5th Cir. 1987), *vacated on other grounds*, 490 U.S. 1032 (1989) ("one substantial contact" may suffice).

### *Conclusion*

This court has admiralty jurisdiction, and U.S. maritime law thus applies. Further, based upon Perforadora's previous assertions that U.S. law applies to torts on Mexican waters involving Mexican vessels and its reliance on U.S. law herein as a defense, Submersible submits that this Court

need not engage in a choice of law analysis. Additionally, because there is no true conflict between U.S. and Mexican law or because of Perforadora's wanton actions, no analysis is required. However, even if an analysis is performed, U.S. law must apply.

*/s/ M. Bagot*

MICHAEL H. BAGOT, JR., Attorney - In - Charge
Tex. Bar No. 1512520 (S.D. Tex. No. 13474)
THOMAS A. RAYER, JR.
La. Bar. No. 20581
**WAGNER & BAGOT, L.L.P.**
Poydras Center, Suite 2660
650 Poydras Street
New Orleans, Louisiana 70130-6105
Telephone: (504) 525-2141
Facsimile: (504) 523-1587

AND

ARTHUR L. SCHECTER
Tex. Bar No. 17735000 (S.D. Tex. No. 1454)
MATTHEW D. SHAFFER
Tex. Bar No. 18085600 (S.D. Tex No. 8877)
DENNIS M. MCELWEE
Tex. Bar No. 13587820 (S.D. Tex. No.7490 )
**SCHECHTER, MCELWEE &
    SHAFFER, L.L.P.**
3200 Travis
Houston, Texas 77006
Telephone: (713) 524-3500
**Counsel for Submersible Systems, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on this _16_ day of June, 2003, a copy of the above and foregoing pleading has been sent to all counsel of record in this action, by telefax or by hand.

*/s/ M. Bagot*

718-01/59984

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 APR 25 PM 4:40

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PERFORADORA CENTRAL, S.A. de C.V. | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 99-2722 |
| | * | |
| M/V ROSIE, ITS ENGINES, TACKLE, | * | SECTION "R" |
| APPAREL, APPPURTENANCES, | * | |
| FURNITURE, EQUIPMENT, ETC., *IN REM* | * | MAG. DIV. 4 |
| AND M/V GULF FLEET 70, ITS ENGINES, | * | An Admiralty and Maritime Claim |
| TACKLE, APPAREL, APPURTENANCES, | * | Within the Meaning of Rule 9(h) |
| FURNITURE, EQUIPMENT, ETC., *IN REM*; | * | |
| TIDEWATER MARINE SERVICE, INC., | * | |
| *IN PERSONAM*, GULF FLEET SUPPLY | * | |
| VESSELS INC., *IN PERSONAM*, SOUTH | * | |
| PACIFIC FISHING INVESTMENT CO. LTD, | * | |
| *IN PERSONAM*, NAUTICA SALTAMAR, S.A. | * | |
| DE C.V., *IN PERSONAM*, AND COTEMAR, | * | |
| S.A. de C.V., *IN PERSONAM* | * | |

## WITNESS AND EXHIBIT LIST OF
## PLAINTIFF, PERFORADORA CENTRAL, S.A. DE C.V.

Plaintiff, Perforadora Central, S.A. de C.V. ("Central"), through undersigned counsel,

submits this Witness List of witnesses they may or will call (live or by deposition), and submits

this Exhibit List of exhibits they may or will use at trial in compliance with this Court's

1

EXHIBIT
P-1

Fee
Process
X Dktd
CtRmDep
Doc.No.

preliminary conference order and expressly reserves the right to supplement and amend these lists as discovery is on-going.

**WITNESSES**

The following is a list of witnesses that Central may or will call (live or by deposition) at trial:

1. Matt Smith-Global Adjusters, Inc., Houston;
2. Ricardo Cortina-Central, Manager of Drilling Division;
3. Juan Jose Gonzales-Central, Drilling Superintendent;
4. Tomas Skipsey-Nautica Saltamar, Manager (on cross-examination);
5. Rafael Lopez Ramirez-Cotemar, Manager (on cross-examination);
6. Mario Leon Martinez-Central, Superintendent;
7. Fernando Cabrera Salas-PPM (PEMEX), Superintendent;
8. Alfredo Cabrera Leon-Head of Maintenance;
9. Armando Orta-ABS, Surveyor;
10. Pedro Colunga-ABS, Surveyor;
11. Joel Fernandez Villegas-Central, Rig Superintendent;
12. Jose Ramon Granadillo Jimenez-Maintenance Superintendent;
13. Demetrio Guzman Nieto-PPM (PEMEX), Superintendent;
14. Moises Delgado Cruz-Safety Manager;
15. Ricardo Ruiz Lechuga-Platform Administrator;
16. Arnulfo Trinidad Cruz-Crane Operator;
17. Javier Enriquez Granaclos-M/V ROSIE Captain (on cross-examination);

18. A.J. Wieland-M/V GULF FLEET 70 Captain (on cross-examination);

19. Jefferson Grant-M/V GULF FLEET 70 Helmsman (on cross-examination);

20. Oscar Manuel Arciniega Orantes-witness on M/V GULF FLEET 70 (on cross-examination);

21. John Jefferson-M/V GULF FLEET 70 First Officer (on cross-examination);

22. Fernando Fonseca-M/V GULF FLEET 70 Captain (on cross-examination);

23. Pablo E. Cruz-Atlantic insurance agent;

24. Jaime Rodriguez Gonzales-Port Captain, Ciudad del Carmen, Mexico;

25. M. Martin Castillo A.-Central, Expert as to repair costs;

26. Any additional witness identified through discovery;

27. Any witnesses listed or called as witnesses by any other party.

## DOCUMENTS

The following is a list of documents that Central may or will use at trial:

1. ABS Certificates of Class for the drilling rig GRIJALVA with surveyors' reports;

2. Drawings demonstrating areas of damage to the legs of the GRIJALVA;

3. Damage cost reports of M. Martin Castillo A.;

4. Letter to Jaime Rodriguez Gonzales dated September 18, 1998;

5. "Acta de Protesta" dated September 6, 1998;

6. Letter to Tomas Skipsey dated September 18, 1998;

7. Letter to Tomas Skipsey dated August 6, 1999;

8. Letter to Tomas Skipsey dated October 27, 1999;

9. Letter to Rafael Lopez Ramirez dated September 18, 1998;

3

10. "Acta de Protesta" dated September 12, 1998;

11. Letter to Jaime Rodriguez Gonzales dated September 18, 1998 with attached "Acta de Protesta" dated September 12, 1998;

12. Letter to Rafael Lopez Ramirez dated October 27, 1999 with list of costs to repair leg No. 1 of the GRIJALVA;

13. Letter to Garza Tello y Asociados dated November 1, 1999;

14. Letter to Rafael Lopez Ramirez dated August 6, 1999;

15. Letter from Matt Smith with Global Adjusters, Inc., dated October 9, 1998;

16. Any and all exhibits attached to any and all depositions;

17. Any document produced by any party during discovery;

18. Any exhibit listed or used as an exhibit by any other party;

19. Any pleadings filed in these proceedings;

20. Additional exhibits identified during discovery.

Plaintiff, Perforadora Central, S.A. de C.V. reserves its right to amend and/or supplement this witness list and exhibit list.

Respectfully submitted,

OF COUNSEL:
MILLING BENSON WOODWARD L.L.P.

_____
Neal D. Hobson (#6885)
Benjamin O. Schupp (#21074)
Sergio J. Alarcon (#24740)
909 Poydras Street - Suite 2300
New Orleans, Louisiana 70112-1010
Telephone: (504) 569-7000
Attorneys for:
Perforadora Central, S.A. de C.V.

4

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing **Witness and Exhibit List of Perforadora Central, S.A. de C.V.** has been served upon all counsel of record by facsimile transmission or United States Mail, postage prepaid and properly addressed, this 25th day of April 2001.

_____

245620-74683

5



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF L

2001 MAY 18 PM 1: 32

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PERFORADORA CENTRAL. S.A. de C.V. | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 99-2722 |
| | * | |
| M/V ROSIE. ITS ENGINES, TACKLE, | * | SECTION "R" |
| APPAREL, APPURTENANCES, | * | |
| FURNITURE. EQUIPMENT. ETC., *IN REM* | * | MAG. DIV. 4 |
| AND M/V GULF FLEET 70. ITS ENGINES. | * | An Admiralty and Maritime Claim |
| TACKLE, APPAREL, APPURTENANCES, | * | Within the Meaning of Rule 9(h) |
| FURNITURE. EQUIPMENT. ETC., *IN REM*; | * | |
| TIDEWATER MARINE SERVICE. INC., | * | |
| *IN PERSONAM*, GULF FLEET SUPPLY | * | |
| VESSELS INC., *IN PERSONAM*, SOUTH | * | |
| PACIFIC FISHING INVESTMENT CO. LTD, | * | |
| *IN PERSONAM*, NAUTICA SALTAMAR, S.A. | * | |
| DE C.V., *IN PERSONAM*, AND COTEMAR, | * | |
| S.A. de C.V., *IN PERSONAM* | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

### JOINT MOTION TO EXTEND DEADLINES

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Perforadora Central,

S.A. de C.V. ("Perforadora Central") and Defendants, Tidewater Marine Service, Inc. ("Tidewater"),

Gulf Fleet Supply Vessels, Inc. ("Gulf Fleet") and Seafarer Boat Corporation ("Seafarer") who

respectfully request that the deadline to file pre-trial motions (currently scheduled as May 8, 2001)

1



DATE OF ENTRY
MAY 2 1 2001

EXHIBIT
P-2

be extended until June 8, 2001; that the deadline for pre-trial motions to be heard (currently scheduled as May 23, 2001) be extended to June 20, 2001; that the deadline to file confidential settlement statements (currently scheduled as May 18, 2001) be extended until June 14, 2001; that the settlement conference before Magistrate Roby (currently scheduled for May 22, 2001) be rescheduled for a date during the week beginning June 18, 2001; and that the discovery deadline (currently set for May 25, 2001) be extended until June 15, 2001. As more fully set forth in the memorandum in support, the reasons for these extensions are:

1.

There remains to be taken scheduled discovery and trial depositions.

2.

The jack-up drilling rig GRIJALVA has, as of the first of May, completed its current assignment; it is only now that the areas of damage that are the subject of this lawsuit can be surveyed, repairs made, and damages properly evaluated.

3.

Defendants have within the last two days dispatched a surveyor to evaluate the alleged damages to the legs of the GRIJALVA. The GRIJALVA is currently located in the Bay of Campeche near Ciudad del Carmen, Mexico.

4.

The events that give rise to this lawsuit occurred in Mexico and involved Spanish speaking witnesses and documents in the Spanish language which have made investigation and discovery more time consuming than normal. The additional time to conduct discovery and prepare for settlement discussions and trial will be of substantial value to all parties in the lawsuit.

5.

The parties desire to continue settlement discussions and need additional time to accomplish same prior to the current pretrial deadlines listed above. Furthermore, the parties believe that the additional time that would be provided by extending the cutoffs listed above will serve to assist the parties in reaching an amicable resolution of this matter.

WHEREFORE, Plaintiff, Perforadora Central S.A. de C.V. and Defendants Tidewater Marine Service, Inc., Gulf Fleet Supply Vessels, Inc. and Seafarer Boat Corporation jointly request that the Court extend the deadline to file pre-trial motions (currently scheduled as May 8, 2001) until June 8, 2001; that the deadline for pre-trial motions to be heard (currently scheduled as May 23, 2001) be extended to June 20, 2001; that the deadline to file confidential settlement statements (currently scheduled as May 18, 2001) be extended until June 14, 2001; that the settlement conference before Magistrate Roby (currently scheduled for May 22, 2001) be rescheduled for a day during the week beginning June 18, 2001; and that the discovery deadline (currently set for May 25, 2001) be extended until June 15, 2001.

Respectfully submitted,

OF COUNSEL:
MILLING BENSON WOODWARD L.L.P.

_____
Neal D. Hobson (#6885)
Benjamin O. Schupp (#21074)
Sergio J. Alarcon (#24740)
909 Poydras Street - Suite 2300
New Orleans, Louisiana 70112-1010
Telephone: (504) 569-7000

Attorneys for:
Perforadora Central, S.A. de C.V.

3

GELPI SULLIVAN CARROLL APLC

_____
James K. Carroll, T.A. (#3898)
Richard A. Fraser, III (#5831)
Pamela L. Schultz (#27077)
400 Poydras Street, Suite 2525
New Orleans, Louisiana 70130
Telephone: (504) 524-9714

Attorneys for Tidewater Marine Services, Inc.,
Gulf Fleet Supply Vessels, Inc. and Seafarer
Boat Corporation

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Responses to Request for Production of Documents have been served on all counsel of record, by placing same in the United States Mail, properly addressed and postage prepaid, this _15th_ day of _May_, 2001.

_____

246904-74683

4