



JUN 2 3 2003

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SUBMERSIBLE SYSTEMS, INC. | § | |
| | § | |
| VS | § | C.A. NO.  B-03-020 |
| | § | |
| PERFORADORA CENTRAL, S.A. de C.V. | § | RULE 9(h) ADMIRALTY |

## RESPONSE TO AMICUS CURIAE BRIEF OF THE GOVERNMENT OF MEXICO

MAY IT PLEASE THE COURT:

I.    **Statement of Issues to be Ruled Upon By the Court.**

    A.    Whether the referenced treaties between the United States and Mexico, which provide for equal treatment of U.S. and Mexican citizens, in fact and in law, mandate that Submersible, as a U.S. legal entity, have the same right and access to the U.S. Courts and to U.S. law, which Perforadora, the Mexican entity, would have under similar circumstances.

    B.    Whether the prosecution of this action is further appropriate and proper when (a) both Mexican and U.S. law condemn the intentional tort of conversion, amounting to piracy; (b) both Mexican and U.S. law allow for recovery of physical loss and loss of use/profits for such conversion (with the only difference being one of procedure

1

and evidence); (c) when Perforadora originally received possession of the property of the U.S. entity in the United States, with the anticipated return of the property to the U.S. entity in the United States; (d) when Perforadora regularly litigates claims for torts in U.S. courts, including this very Court, for events which occurred in Mexico; and (e) when Perforadora knew that its action had a direct impact on the U.S. entity and in the United States.

C.     Whether Perforadora, an intentional tort defendant, may avoid liability for the full measure of damages it caused to a U.S. entity by seizing and holding property it knew belonged to the U.S. entity, when it also knew its actions were affecting the business and contracts of the U.S. entity.

## II.     Summary of Argument.

This action presents a claim for an intentional tort, a wrongful and illegal conversion of property amounting to piracy, with the willful and wanton deprivation of said property belonging to a U.S. entity. In this matter, there is no true conflict between the United States and Mexican law.[1] The choice of law analysis of *Lauritzen/Rhoditis*[2] or their progeny is not implicated. As a case of intentional conversion, Perforadora's vessel should be considered "stateless,"[3] and any connection

---

[1] *Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993).

[2] *Lauritzen v. Larson*, 345 U.S. 571 (1953); *Hellenic Lines v. Rhoditis*, 398 U.S. 306 (1970).

[3] *U.S. v. Smith*, 18 U.S. 153 (1820), *U.S. v. Furlong*, 18 U.S. 184 (1820), *U.S. v. Marino Garcia*, 679 F.2d 1373 (11th Cir. 1982), *cert. denied*, 459 U.S. 1114 (1983).

with the United Mexican States should be ignored for purposes of choice of law and *forum non conveniens*.

The United Mexican States improperly and inaccurately relies upon treaties which in fact grant citizens of both countries equal, fair and just treatment. Perforadora, the defendant herein, has long sought and received the benefit and protection of U.S. law and U.S. courts, and Submersible, the plaintiff herein, likewise seeks that protection with this action.

The application of international treaties, which provide for equal protection of citizens of both countries, actually supports retention and adjudication of this action in this Court. Certainly, any Mexican entity which brought a similar suit in admiralty in the United States for conversion by a U.S. entity in Mexico would be entitled to the full measure of law and jurisdiction in the United States. Submersible seeks nothing more or nothing less.

It is significant to note that this a case of intentional tort; it is not a contract dispute. The first physical connection between Submersible and Perforadora occurred in the United States (Morgan City) when Perforadora received and loaded Submersible's equipment. At the conclusion of Submersible's work for its contracting party, Quantum, Submersible was to receive its equipment back in the United States. The intentional action of Perforadora in seizing and withholding Submersible's property in Mexico interfered with and interrupted that expectation, producing ongoing and serious consequences and damages in the United States. Having intentionally converted the property of a U.S. entity which was to be utilized in the United States, Perforadora cannot claim, and Mexico should not assert, then Perforadora can be sued only in Mexican courts and under the

3

laws of Mexico. This is particularly true when Perforadora itself has often sought and received the benefit and protection of U.S. jurisdiction and law for torts and events occurring in Mexico. The Amicus Brief wholly ignores Perforadora's very considerable domestic interests enjoyed here.

## III.    Argument

### A.    *The Position of the Amicus Brief Does Not Truly Address the Policy and Purpose of the Treaty or Seek to Advance a Position of International Relationship.*

The position of the amicus brief merely advocates a point of view regarding the cause of action and dispute and does not raise a question of policy or intentional comity.[4] The Amicus Brief nowhere recognizes or addresses that Perforadora has so often sought and obtained the protection and jurisdiction of the United States.

### B.    *The Treaties Do Not Require the Dismissal of this Suit or Application of Mexican Law; Moreover, They Support This Court's Retaining Jurisdiction and Applying U.S. Law.*

The International Covenant on Civil and Political Rights and the Convention of Rights and Duties of States cited by the United Mexican States require that the courts of the United States treat Mexican citizens the same as if they were U.S. citizens. Submersible does not ask that this Court treat Perforadora differently than a U.S. citizen.

The International Covenant on Civil and Political Rights and the Convention of Rights and Duties of States which the United Mexican States refers to in its Amicus Brief, require as a matter of law that the courts of the United States treat Mexican entities the same as they would for U.S.

---

[4] According to Perforadora's answers to Submersible's interrogatories, Perforadora is paying for the Amicus Brief. See Perforadora's Responses to First Set of Interrogatories and Request for Production of Documents, attached as Exhibit "A." Response to Interrogatory No. 2.

4

citizens. Submersible does not ask that the Court treat Perforadora differently than a U.S. citizen;[5] this is true whether or not the parties are before the court as plaintiffs or defendants. Perforadora, as an Mexican entity would be entitled to these very rights in a U.S. court against a U.S. entity which committed such a conversion in Mexico.

Perforadora, were its property wrongfully withheld by Submersible or other U.S. entity, would certainly be entitled to pursue the full panoply of rights and remedies in U.S. courts as any U.S. citizen, including the full measure of loss of use, profits and punitive damages, including the right to punitive damages.[6] See *Jennings v. The Boeing Co.*, 660 F.Supp. 796, 800 (E.D. Pa. 1987) ("Because the plaintiff holds dual citizenship of Great Britain and the Republic of Ireland, she is

---

[5] Ironically, Perforadora seeks to hide behind its Mexican citizenship to avoid being held liable for an intentional tort in a U.S. court.

[6] Indeed, the position taken by the Government of Mexico in this case may conflict with the position it has taken as amicus in *Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T RESPECT*, 89 F.3d 650 (9th Cir. 1996). In that case, PEMEX, an instrumentality of the Mexican Government, filed an intervention in connection with a dispute regarding contaminated diesel fuel. After the dispute arose, a written settlement agreement was reached in Mexico, but the offending vessel subsequently weighed anchor and removed itself to California, where suit was filed. The United Mexican States filed an amicus brief in that case. A copy of that brief is attached hereto as Exhibit "B". At p. 9 of its brief, the United Mexican States aver as follows:

> Mexico respectfully submits that had the tables been turned and had this been United States government property that had been stolen and taken to Mexico, the United States Government would insist that the matter be resolved in its own courts rather than in the courts of Mexico.

In this case, Submersible's equipment was taken from the United States and ultimately seized and withheld (effectively "stolen") by Perforadora. Accordingly, under its approach in the *M/T RESPECT* case, even Mexico would agree that this matter should be resolved in a U.S. court.

entitled to national treatment secured by the treaty . . . As an Irish citizen, she is entitled to the same

rights or recovery afforded to any citizen of the State of the Union . . . who files a diversity action

in this federal district court. To the extent that such a plaintiff would be entitled to recover punitive

damages under the laws and regulations within the United States, so may Mrs. Jennings.") Thus,

Mexico should presumably agree that its citizens are entitled to the same quantum recovery as U.S.

citizens in cases brought in the United States (even for suits arising from torts occurring abroad).

### C.    *Perforadora's Contacts and Relationship with This Court and the United States Dispositively Establish that This Court is the Proper Forum.*

The record is replete with numerous contacts between Perforadora and this Court and nation.

Perforadora has often times resorted to this very Court and to United States substantive law for torts

occurring in the territorial waters of Mexico.[7] Perforadora cannot now avoid U.S. jurisdiction and

U.S. law particularly when it has initially received custody of Submersible's property in the United

States and thereafter intentionally seized and withheld the property from Submersible whereby

---

[7] In response to Submersible's discovery, Perforadora refused to produce (a) all complaints, petitions, cross-claims or third-party petitions filed by Perforadora in a United States court (federal or state) from January 1, 1990 until present, (b) all pleadings filed by Perforadora in a United States court (federal or state) from January 1, 1990 until present wherein Perforadora asserted a maritime lien for a collision or other tort which occurred on Mexican territorial waters, and (c) all pleadings filed by Perforadora in a United States court (federal or state) from January 1, 1990 until present wherein Perforadora asserted that U.S. admiralty jurisdiction extends to or exists with respect to a collision or other tort which occurred on Mexican territorial waters. See Exhibit "A." Responses to Requests Nos. 2, 3 and 4. These refusals will be the subject of a forthcoming motion to compel. However, this Court can construe the refusal to produce these documents against Perforadora and in favor of Submersible's position that U.S. law should be applied to the entire case. See also suits attached as Exhibit "B" to Submersible's Response to Motion to Dismiss on Ground of *Forum Non Conveniens* and as Exhibit "M" to Submersible's Surreply.

causing great losses to Submersible in the United States.   Thus, the statement in the Amicus Brief that this Court has "absolutely no connection with either the parties, witnesses, exhibits or events. . .," Amicus Brief at p. 2, is manifestly incorrect and ignores Perforadora's very substantial domestic interests as well as its litigation history here.

Mexico and Perforadora's alternative arguments that (1) Submersible has no connection with this Court and (2) this Court is not Submersible's "home forum" are likewise baseless and incorrect. Perforadora recites that its two inland posted drilling barges located in Abbeville, Louisiana,[8] and Submersible should have brought suit in Louisiana. First, undersigned counsel's office checked on the location of said barges after the Fifth Circuit's ruling and was advised that the barges were stacked in Mexico.   See Declaration of Michael H. Bagot, Jr. attached hereto as Exhibit "D". Submersible had no knowledge that Perforadora had any property in the State of Louisiana when this suit was filed.   Based on the Fifth Circuit's ruling, the Southern District of Texas is the only forum where Submersible believe it could obtain jurisdiction in the United States, *i.e.,* Submersible's "home forum" for purposes of *forum non conveniens* analysis.

Alternatively, accepting Perforadora's challenge on its face, Submersible would be willing to allow a transfer of this action to the Western District of Louisiana (where Abbeville is located) for all further proceedings.  This transfer, of course would be subject to the retention of full security for the continuing Rule B attachment. See, *Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19 (1960).

---

[8] See Exhibit P-87 introduced in the Mississippi case attached hereto as Exhibit "C".

7

**D.    The Argument of Amicus Regarding the Proceedings in the Southern District of Mississippi Is Baseless.**

The Southern District of Mississippi has ruled that it was a proper forum under a *forum non conveniens* analysis.  No other court has addressed this issue.  While that Southern District of Mississippi judgment was vacated by the Fifth Circuit, the Fifth Circuit did not rule that Mississippi was an improper forum.  The ruling of the Fifth Circuit was that personal jurisdiction was lacking because the Perforadora Rig was not formally attached.  There is no ruling that the Mississippi court was an improper or inappropriate forum.  Moreover, the suggestion that this Court should ignore discovery taken in Mississippi proceedings, Amicus Brief at pp. 9-10, is patently wrong.  No jurisprudence or authority is cited.  The Federal Rules of Civil Procedure specifically allow the use of any discovery taken in prior litigation in the United States in subsequent litigation between the same parties involving the same issues.  See F.R. Civ. P. 32(a)(4).  Conversely, there is undisputed evidence in the record that re-litigation in Mexico would be much more time consuming and expensive in litigation in the Southern District of Texas.  Why require such a duplication of sworn testimony and documentation previously relied upon by both parties?  Obviously, duplicating the discovery process and redoing the entire case in Mexico would be extremely time consuming and expensive and certainly unnecessary when this matter can proceed promptly to adjudication to the Southern District of Texas with the available record.

**E.  Submersible Has No Ongoing Business in Mexico**

While it is true that Submersible sought work in Mexico after Perforadora's vessel transported its personnel and equipment from the United States to Mexico, its activities in Mexico

were brought to a swift and complete cessation by Perforadora's intentional seizure and holding of its equipment. Contrary to the representations of the United Mexican States, Submersible does not engage in work in Mexico, does not transport people and property to Mexico and does not interact with Mexican companies and Mexican citizens in Mexico. See Declaration of Wolfgang Burnside, attached as Exhibit "E". Moreover, Perforadora itself knows from the Fifth Circuit's earlier ruling the fact that a company transports people and property to a state, interacts with companies and citizens in that state, see Amicus Brief at pp. 10-11, does not mean that that company should and can reasonable expect being haled into courts of that state. Further, it is amazing that Perforadora even suggests that it did not expect to be haled into a United States court under United States law for an act of piracy which it knew would have tremendous effects on a U.S. company. See Tr. Transcript at pp. 368-9 (Perforadora manager aware Submersible was losing contracts and business as a result of seizure), attached as Exhibit "F".

## IV.    Conclusion

**WHEREFORE,** for the foregoing reasons and those asserted in its earlier pleadings, Submersible prays that the Court deny Perforadora's Motion to Dismiss on Ground of *Forum Non Conveniens* and that the Court apply substantive U.S. law to this action.

Respectfully submitted,

_____

MICHAEL H. BAGOT, JR., Attorney - In - Charge
Tex. Bar No. 1512520 (S.D. Tex. No. 13474)
THOMAS A. RAYER, JR.
La. Bar. No. 20581
**WAGNER & BAGOT, L.L.P.**
650 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6105
Telephone: (504) 525-2141
Facsimile: (504) 523-1587

AND

ARTHUR L. SCHECTER
Tex. Bar No. 17735000 (S.D. Tex. No. 1454)
MATTHEW D. SHAFFER
Tex. Bar No. 18085600 (S.D. Tex No. 8877)
DENNIS M. MCELWEE
Tex. Bar No. 13587820 (S.D. Tex. No.7490 )
**SCHECHTER, MCELWEE &**
**SHAFFER, L.L.P.**
3200 Travis
Houston, Texas 77006
Telephone: (713) 524-3500
**Counsel for Submersible Systems, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 21 day of June, 2003, a copy of the above and foregoing

pleading has been sent to all counsel of record in this action, by telefax or by hand.

_____

718-01/60136

10

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SUBMERSIBLE SYSTEMS, INC. | § | |
| | § | |
| VS | § | C.A. NO.  B-03-020 |
| | § | |
| PERFORADORA CENTRAL, S.A. de C.V. | § | RULE 9(h) ADMIRALTY |

## DECLARATION OF MICHAEL H. BAGOT, JR.

Pursuant to 28 U.S.C. § 1746, I make the following declaration:

1.     I am counsel for Submersible Systems, Inc., plaintiff herein;

2.     The Responses to the First Set of Interrogatories and Request for Production of Documents attached hereto is a copy of an e-mail I received on May 20, 2003 from the offices of counsel for Perforadora Central, S.A. de C.V.;

3.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 21, 2003, at New Orleans, Louisiana.

_____
MICHAEL H. BAGOT, JR.

718-01/60170

1

EXHIBIT

A

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **SUBMERSIBLE SYSTEMS, INC.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. B-03-020** |
| | * | |
| **PERFORADORA CENTRAL, S.A. de C.V.** | * | **RULE 9(h) ADMIRALTY** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PERFORADORA CENTRAL, S.A. de C.V.'s
## RESPONSES TO FIRST SET OF INTERROGATORIES AND
## REQUEST FOR PRODUCTION OF DOCUMENTS

TO:    Submersible Systems, Inc.
       Through their attorney of record
       Michael H. Bagot, Esq.
       Thomas A. Rayer, Jr., Esq.
       Wagner & Bagot, L.L.P.
       Poydras Center, Suite 2660
       650 Poydras Street
       New Orleans, Louisiana 70130-6105

       Arthur L. Schecter
       Matthew D. Shaffer
       Dennis M. Mcelwee
       Schechter, Mcelwee & Shaffer, L.L.P.
       3200 Travis
       Houston, Texas 77006

Defendant Perforadora Central, S.A. de C.V., responds to plaintiff Submersible Systems,

Inc.'s first set of interrogatories and request for production of documents, as follows:

## GENERAL OBJECTIONS

Several of Submersible Systems, Inc.'s ("SSI") interrogatories and document requests seek

private financial and commercial information. In addition, those interrogatories and document

requests seek the information for a broad period of time. Perforadora Central, S.A. de C.V. ("Perforadora Central") is a privately held Mexican corporation. The information sought is neither relevant nor likely to lead to information admissible at trial. Perforadora Central's financial status is clearly not a relevant issue in this case at this time.[1]

Information about a party's financial condition and net worth is seldom relevant. Although SSI has made a claim for punitive damages, the information regarding Perforadora Central's net worth should become discoverable only if and when the Court determines that compensatory damages are to be awarded.[2]  Not only is SSI's request for information regarding Perforadora Central's net worth premature, if Mexican law applies, as Perforadora Central contends, Perforadora Central's net worth is not relevant.[3]

With full reservation of all rights under the above objections, Perforadora Central responds to the interrogatories and request for production as follows:

## INTERROGATORY NO. 1:

In the event that the net worth of Perforadora has changed from the net worth shown in the

---

[1]  "Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence." *See Ranney - Brown Distributors, Inc. v E.T. Barwick Industries, Inc.*, 75 FRD 3, 4 (S.D. Ohio 1977); *Renshaw v. Ravert*, 82 FRD 361, 363 (E.D. Pa. 1979) (Inquiry into defendant's personal financial status is not ordinarily permitted, citing, Wright & Miller, Federal Practice & Procedure, 2010 at 93 (1970); *Bogosian v. Gulf Oil Corp.*, 337 F. Supp. 1228 (E.D. Pa. 1971) (deposition questions with respect to anti-trust plaintiff's net worth and his ability to satisfy judgment for cost in the event that defendants prevailed were not relevant to the subject matter of the lawsuit).

[2]  *John Doe's I - V v. Yogi*, 110 FRD 629, 633 (D.D.C. 1986) (discovery of financial status should not be turned over until necessary to prove open punitive damages); *Rupe v. Fourman*, 532 F. Supp. 344, 350-51 (S.D. Ohio 1981); *Davis v. Ross*, 107 FRD 326, 327-28 (S.D.N.Y. 1985).

[3]  Perforadora Central objects to SSI's possession of plaintiff's trial exhibit 92, which was produced under seal to Judge Gex in the proceeding in the United States District Court for the Southern District of Mississippi, asserts the confidential nature of the information and, if necessary, will file a motion for protective order seeking to restrict SSI's disclosure of the information to anyone, including SSI's representatives and will seek the disclosure under seal of its current net worth if that information becomes relevant.

2

financial statement introduced as Exhibit "P-92" in the suit then pending in the United States District Court for the Southern District of Mississippi between the parties in this case and present, state how it changed, i.e., increased or decreased, and by how much in U.S. dollars.

## RESPONSE TO INTERROGATORY NO. 1:

See General Objections above. Exhibit P-92 was disclosed under seal. The information contained therein is proprietary and confidential and should not be disclosed to anyone, including SSI's representatives. If necessary, Perforadora Central will file a motion for protective order preventing the disclosure of the information contained in Exhibit P-92 and providing for the disclosure of its current net worth under seal, if that information becomes relevant.

## INTERROGATORY NO. 2:

State what agreement, if any, exists between the Foreign Secretariat or other branch of the government of the United Mexican States and Perforadora as to who would make a monetary contribution to or pay for the preparation or submission of any amicus pleadings filed by the Foreign Secretariat or other branch of the government of the United Mexican States in this matter.

## RESPONSE TO INTERROGATORY NO. 2:

Perforadora Cental objects to Interrogatory No. 2. The information sought is not relevant to any of the issues in this case and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objection, there is currently no agreement between the Secretariat of Foreign Relations or any other branch of the Government of the United Mexican States and Perforadora Central as to who would make a monetary contribution to or pay for the preparation or submission of any amicus pleadings filed by the Secretariat or other branch of the Government of the United Mexican States in the matter. Perforadora Central is, however, aware that it is the policy of the Secretariat, in those circumstances it deems it advisable or prudent to make an appearance in support of the interest of the Government of the United Mexican States, not to incur costs in

3

connection with such an appearance. Perforadora Central, therefore, anticipates that it will contribute to the payment of the costs associated with the preparation and submission of the amicus brief.

## INTERROGATORY NO. 3:

State what agreement, if any, exists between the Foreign Secretariat or other branch of the government of the United Mexican States and Perforadora as to who would author, in whole or in part, any amicus pleadings filed by the Foreign Secretariat or other branch of the government of the United Mexican States in this matter.

## RESPONSE TO INTERROGATORY NO. 3:

Perforadora Central objects to Interrogatory No. 3. The information sought is not relevant to any of the issues in this case and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objection, there exists no agreement between the Secretariat of Foreign Relations or other branch of the Government of the United Mexican States and Perforadora Central as to who would author, in whole or in part, any amicus pleadings filed by the Foreign Secretariat. To the best of Perforadora Central's knowledge, the Secretariat's approved U.S. counsel will prepare and file the amicus brief at the direction of the Secretariat's legal advisor and subject to the approval of the Secretariat as to form and content.

## INTERROGATORY NO. 4:

Identify all persons whom you will or may call as witnesses at trial in this matter.

## RESPONSE TO INTERROGATORY NO. 4:

Perforadora Central objects to this interrogatory as premature. Perforadora Central's Rule 26 Disclosure will contain this information.

4

**INTERROGATORY NO. 5:**

With respect to the persons listed in response to the foregoing Interrogatory, please give a brief description of their anticipated testimony.

**RESPONSE TO INTERROGATORY NO. 5:**

Perforadora Central objects to this interrogatory as premature.  Perforadora Central's Rule 26 Disclosure will contain this information.

**INTERROGATORY NO. 6:**

Identify each asset of Perforadora, whether movable or immovable, currently located in the United States.  In your response, identify each asset with particularity, including the serial numbers of all assets with a value exceeding $100,000.00.

**RESPONSE TO INTERROGATORY NO. 6:**

Perforadora Central objects to Interrogatory No. 6.  The information sought is not relevant

to any of the issues in this case and is not reasonably calculated to lead to the discovery of admissible

evidence.

**INTERROGATORY NO. 7:**

With respect to each asset listed in response to the foregoing Interrogatory, identify the state and city in which each asset is located, the street address fo the location of the asset, the value of the asset and whether such assets will likely remain in the United States through 2003.

**RESPONSE TO INTERROGATORY NO. 7:**

Perforadora Central objects to Interrogatory No. 7.  The information sought is not relevant

to any of the issues in this case and is not reasonably calculated to lead to the discovery of admissible

evidence.

## REQUEST FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

Produce all financial statements of Perforadora issued or prepared from January 1, 1997 through present.

### RESPONSE TO REQUEST NO. 1:

Perforadora Central objects to the documents sought in Request No. 1. The information sought is not relevant to any of the issues in this case and is not reasonably calculated to lead to the discovery of any admissible evidence.

### REQUEST FOR PRODUCTION NO. 2:

Produce all complaints petitions, cross-claims or third-party petitions filed by Perforadora in any suit pending in a United States court (federal or state) from January 1, 1990 until present.

### RESPONSE TO REQUEST NO. 2:

Perforadora Central objects to the documents sought in Request No. 2. The information sought is not relevant to any of the issues in this case and is not reasonably calculated to lead to the discovery of any admissible evidence.

Additionally, even if it were deemed to be relevant, the request is unnecessarily broad, burdensome and intended to harass. If any such information that is not already in the possession of SSI exists, such information is public record and SSI is in as good a position to obtain the information as Perforadora Central.

### REQUEST FOR PRODUCTION NO. 3:

Produce all pleadings filed by Perforadora in a United States court (federal or state) from January 1, 1990 until present wherein Perforadora asserted a maritime lien for a collision or other tort which occurred on Mexican territorial waters.

**RESPONSE TO REQUEST NO. 3:**

Perforadora Central objects to the documents sought in Request No. 3. The information sought is not relevant to any of the issues in this case and is not reasonably calculated to lead to the discovery of any admissible evidence.

Additionally, even if it were deemed to be relevant, the request is unnecessarily broad, burdensome and intended to harass. If any such information that is not already in the possession of SSI exists, such information is public record and SSI is in as good a position to obtain the information as Perforadora Central.

**REQUEST FOR PRODUCTION NO. 4:**

Produce all pleadings filed by Perforadora in a United States court (federal or state) from January 1, 1990 until present wherein Perforadora asserted that U.S. admiralty jurisdiction extends to or exists with respect to a collision or other tort which occurred on Mexican territorial waters.

**RESPONSE TO REQUEST NO. 4:**

Perforadora Central objects to the documents sought in Request No. 4. The information sought is not relevant to any of the issues in this case and is not reasonably calculated to lead to the discovery of any admissible evidence. Additionally, even if it were deemed to be relevant, the request is unnecessarily broad, burdensome and intended to harass. If any such information that is not already in the possession of SSI exists, such information is public record and SSI is in as good a position to obtain the information as Perforadora Central.

**REQUEST FOR PRODUCTION NO. 5:**

Produce all documents sent to or from officers of the Foreign Secretariat of the United Mexican States or other branch(es) of the Mexican government by or to Perforadora, its agents, attorneys or employees, related in any manner to amicus filings in this matter.

7

**RESPONSE TO REQUEST NO. 5:**

Perforadora Central objects to the information sought in Request No. 5. The information sought is not relevant to any of the issues in this case and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, even if such documents were relevant, to the extent that the Mexican Government and Perforadora Central share a common interest in having events and disputes predominantly connected to Mexico adjudicated in Mexico pursuant to Mexican law, they would be subject to a joint defense privilege.

**REQUEST FOR PRODUCTION NO. 6:**

Produce all documents identifying or listing the parties, persons or entities who would make a monetary contribution towards or pay for the preparation or submission of any amicus pleadings filed by the Foreign Secretariat or other branch of the government of the United Mexican States in this matter.

**RESPONSE TO REQUEST NO. 6:**

Perforadora Central objects to the information sought in Request No. 6. The information sought is not relevant to any of the issues in this case and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, even if such documents were relevant, to the extent that the Mexican Government and Perforadora Central share a common interest in having events and disputes predominantly connected to Mexico adjudicated in Mexico pursuant to Mexican law, they would be subject to a joint defense privilege. Subject to the foregoing objection and privilege, Perforadora Central has no documents in its possession identifying or listing the parties, persons or entities who would make a monetary contribution towards or pay for the preparation or submission of any amicus pleadings filed by the Secretariat of Foreign Relations of the United Mexican States.

**REQUEST FOR PRODUCTION NO. 7:**

Produce all documents identifying or listing the parties, persons, or entities who would author, in whole or in part, any amicus pleadings to be filed on behalf of the Foreign Secretariat or other governmental branch of the United Mexican States in this matter.

**RESPONSE TO REQUEST NO. 7:**

Perforadora Central objects to the information sought in Request No. 7. The information sought is not relevant to any of the issues in this case and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, even if such documents were relevant, to the extent that the Mexican Government and Perforadora Central share a common interest in having events and disputes predominantly connected to Mexico adjudicated in Mexico pursuant to Mexican law, they would be subject to a joint defense privilege.

**REQUEST FOR PRODUCTION NO. 8:**

Produce all documents which you will or may use as exhibits in the trial of this matter.

**RESPONSE TO REQUEST NO. 8:**

Perforadora Central objects to this request as premature. Perforadora Central's Rule 26 Disclosure will contain this information.

**REQUEST FOR PRODUCTION NO. 9:**

Produce the curriculum vitae and report of all experts whom you have retained to testify in this matter.

**RESPONSE TO REQUEST NO. 9:**

Perforadora Central objects to this request as premature. Perforadora Central's Rule 26 Disclosure will contain this information.

Respectfully submitted,

OF COUNSEL:

MILLING BENSON WOODWARD L.L.P.

_____

JAMES K. IRVIN (#7166)
BENJAMIN O. SCHUPP (#21074)
SERGIO J. ALARCON (#24740)
909 Poydras Street, Suite 2300
New Orleans, LA 70112-1010
Telephone: (504) 569-7000
Facsimile: (504) 569-7001

ROYSTON RAYZOR VICKERY
& WILLIAMS L.L.P.

KEITH UHLES (Tex Bar No. 20371100)
(S.D. Tex. No. 1936)
55 Cove Circle
Brownsville, TX 78523-3509
Telephone: (956) 542-4377
Facsimile: (956) 542-4370

*Attorneys for Perforadora Central S.A. de C.V.*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **Response to Interrogatories and Request for Production of Documents** has been served upon all counsel of record by depositing same in the United States Mail, first class postage prepaid and properly addressed, this _____ day of June, 2003.

_____

wp300876

10

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION & INTEREST OF THE GOVERNMENT
       OF THE UNITED MEXICAN STATES . . . . . . . . . . .   3

II.    STATEMENT OF FACTS . . . . . . . . . . . . . . . .   4

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . .   6

       A.   Mexico Has the Sovereign Right to
            Structure Its Government As It Sees Fit. . . .   6

       B.   This Dispute Does Not Involve the
            United States and Should Be Resolved
            in Mexico. . . . . . . . . . . . . . . . . . .   8

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . .   9

- i -

**EXHIBIT**

**B**

## TABLE OF AUTHORITIES

<u>CASE</u>                                                              <u>PAGE</u>

<u>Gates v. Victor Fine Foods</u>, 54 F.3d 1457
        (9th Cir. 1995)  . . . . . . . . . . . . . . . . . . . . . .  6


<u>RULES, STATUTES, ETC.</u>

Foreign Sovereign Immunities Act,
        28 U.S.C. § 1603 et. seq ("FSIA")  . . . . . . . . . 2, 5-7

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## BRIEF OF AMICUS CURIAE OF THE UNITED MEXICAN STATES

### BY THE LEGAL ADVISOR OF THE SECRETARIAT

### OF FOREIGN RELATIONS OF MEXICO

By filing this brief, the United Mexican States ("Mexico") does not submit to the jurisdiction of the United States of America's courts and do not waive the foreign sovereign immunity to which Mexico is entitled according to international law and the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603 *et. seq* ("FSIA").

///

- 2 -

The Legal Advisor of the Secretariat of Foreign Relations of Mexico submits this Brief of *Amicus Curiae* in support of Appellee Pemex-Refinacion, a decentralized public agency of Mexico.

## I.  INTRODUCTION & INTEREST OF THE GOVERNMENT
## OF THE UNITED MEXICAN STATES

By this appeal, Appellants challenge Mexico's sovereign right to structure its government and its various entities as it sees fit and they further argue that the United States is the appropriate forum to decide a purely Mexican dispute. Specifically, Appellants argue that Pemex-Refinacion ("Pemex-Refining"), a decentralized public agency of Mexico, is not entitled to the protections afforded to sovereign states because Mexico has labeled it a "subsidiary" of another governmental agency, Petroleos Mexicanos ("Pemex"). Curiously, Appellants even argue that their illegal act of transporting Pemex-Refining's property to the United States has now made this dispute one that is properly to be resolved in the U.S. courts, despite the fact that the parties, contracts, property and alleged tortious conduct all occurred entirely within Mexico.

Because both the sovereignty of Mexico and Mexican government property are directly involved in this dispute, the United Mexican States request leave to submit this Brief of *Amicus Curiae* and, further, request that the District Court's decision be affirmed and this appeal dismissed.

///

- 3 -

## II.  STATEMENT OF FACTS

As has been correctly set forth in the Declarations of Marcella Carasco (ER 29) and Consul General Jose Angel Pescador Osuna (ER 34), Pemex-Refining is a decentralized public agency of Mexico established under the United Mexican States' Constitution, Ley Reglementaria Del Articulo 27 Constitucional en el Ramo de Petroleo ("the Regulatory Law"), Ley Organica de Petroleos Mexicanos Y Organismos Subsidiarios ("the Organic Law") and Presidential Decree.  Pemex-Refining is entirely owned by Mexico and is a "subsidiary" of Pemex which is also entirely owned by Mexico.  Pemex-Refining has the exclusive right to refine, distribute and retail petroleum products which, under Mexican law, belong exclusively to the Mexican State.  Pemex-Refining is managed by a General Director appointed by Mexico's Federal Executive and an eight-member Administrative Council, each of whom is appointed by Mexico's Federal Executive.  All of Pemex-Refining's employees are public servants of Mexico.

Based on these undisputed facts, U.S. District Court Judge James Ideman correctly concluded that Pemex-Refining is an agency and instrumentality of Mexico and is, therefore, entitled to the same privileges and immunities as those afforded Mexico under international law and the United States' Foreign Sovereign Immunities Act ("FSIA").  Appellants, Respect Shipping Private Limited, Trans Petrol Services, N.V. and the M/V RESPECT, _in rem_, (hereinafter collectively referred to as "Respect") challenge Judge Ideman's findings with semantics and an inadmissible magazine article.

The subject of this lawsuit is the contamination of a

- 4 -

1  cargo of diesel fuel owned by Pemex-Refining which was being

2  transported aboard the M/V RESPECT between Mexican ports. Under

3  Mexican law, the cargo was owned by Mexico through its ownership

4  of Pemex-Refining. It was loaded aboard the M/V RESPECT at a

5  Pemex-Refining facility in Salina Cruz, Mexico. It was bound for

6  a Pemex-Refining facility in Rosarito, Mexico. The parties to

7  this dispute include: Pemex-Refining, a Mexican government

8  entity; Corporacion Mexicana de Servicios Maritimos, S.A. de

9  C.V., a Mexican corporation; Respect Shipping Private Limited, a

10  Singapore corporation; Trans Petrol Services, a Belgian corpora-

11  tion; and the M/V RESPECT, in rem, a Singapore flagged vessel.

12  At least two contracts were entered into between the various

13  parties for the transport of Pemex-Refining's petroleum cargo

14  aboard the M/V RESPECT. All of these contracts were entered into

15  in Mexico, and Pemex-Refining's contract with CMSM specified that

16  Mexican law would control.

17      When the contamination of the diesel cargo was discov-

18  ered in Mexico, the parties entered into a written agreement in

19  Mexico dated September 28, 1994, to resolve their dispute in

20  Mexico. Less than 72 hours after signing that written agreement,

21  Respect fled Mexico for the United States with Pemex-Refining's

22  cargo still on board. Had it not been for Respect's criminal act

23  of fleeing Mexico, this dispute would never have involved the

24  United States' courts or the application of the United States'

25  FSIA. Instead, the dispute would have been resolved in Mexico,

26  as it should be. U.S. District Court Judge James Ideman correct-

27  ly reached the same conclusion and dismissed this suit for lack

28  of jurisdiction under the FSIA. Respect challenges this conclu-

- 5 -

1  sion on appeal, arguing that jurisdiction does exist because

2  Pemex-Refining waived its immunity under the FSIA by voluntarily

3  appearing in the U.S. courts to recover its stolen property.

4

5                    III.  ARGUMENT

6  A.          Mexico Has the Sovereign Right to Structure Its Govern-

7              ment As It Sees Fit.

8          Pemex-Refining is a governmental entity legitimately

9  created under Mexican law for the management of Mexican govern-

10 ment property.  Under Mexican law, Pemex-Refining carries the

11 legal title of "subsidiary" to Pemex.  The title "subsidiary," as

12 used in the Organic Law and applied to Pemex-Refining, does not

13 privatize or otherwise take Pemex-Refining or its sister subsid-

14 iaries out from under the Mexican government umbrella.  To the

15 contrary, Pemex-Refining remains a public entity and an integral

16 part of the Mexican government.

17         Respect argues that Pemex-Refining is not entitled to

18 the same privileges and immunities as Mexico solely because

19 Mexico has characterized the company as a "subsidiary."

20 Respect's argument is based upon its interpretation of this

21 Court's decision in Gates v. Victor Fine Foods, 54 F.3d 1457

22 (9th Cir. 1995).  This argument not only exalts form over sub-

23 stance, but improperly interferes with Mexico's sovereign right

24 to structure its own government and to use whatever titles or

25 labels it chooses in describing its own organization.  As inter-

26 preted by Respect, the FSIA would require foreign governments to

27 structure themselves and to use titles acceptable in the U.S. or

28 suffer the loss of their sovereign immunity.  This clearly was

                         - 6 -

1    not the intent of the FSIA which provides a broad definition of a

2    "foreign state," encompassing within it any "agency" or "instru-

3    mentality" of that foreign state.   28 U.S.C. § 1603 et. seq.

4             Assuming that foreign governments should structure

5    themselves with an eye toward conformance with U.S. law in order

6    to assure continued sovereign immunity, the FSIA does not cate-

7    gorically exclude "subsidiaries" from immunity despite this

8    Court's 1995 decision in <u>Gates v. Victor Fine Foods</u>.  Mexico had

9    no reason to anticipate in 1992 (when Pemex-Refining was made a

10   subsidiary of Pemex) that it might be stripped of its sovereign

11   immunity under U.S. law by reason the election of refer to Pemex-

12   Refining as a "subsidiary".  Although bright line tests may be

13   appealing in the law, they cannot and should not be applied in

14   the international arena when deciding whether a particular entity

15   is entitled to sovereign immunity.  Rather than rely upon labels,

16   Mexico asserts that deference must be given to the organization

17   created by the foreign sovereign and a "totality of the circum-

18   stances" test should be applied.  In this case, Mexico declares,

19   the totality of circumstances readily confirm, and the District

20   Court correctly concluded, that Pemex-Refining is an "agency and

21   instrumentality" of the Mexican government and, as such, is

22   entitled to all of the privileges and immunities of this

23   country's Foreign Sovereign Immunities Act, whether or not Pemex

24   Refining is called a "subsidiary."

25

26

27

28   ///

- 7 -

B.        <u>This Dispute Does Not Involve the United States and</u>
          <u>Should Be Resolved in Mexico.</u>

The dispute over the contamination of Pemex-Refining's diesel cargo does not involve any commercial activity in the U.S., does not involve U.S. citizens and does not involve any U.S. property.  To the contrary, the entire dispute exclusively arose in and is tied to Mexico.  The sole reason that litigation arose in the United States was due to Respect's criminal conduct in fleeing Mexico for the United States with Pemex-Refining's property still on board its vessel.  The Mexican government views this as an illegal act of international piracy, and criminal charges against those responsible have been filed in Mexico.

The clear intent of Respect in fleeing Mexico was to rid itself of the contaminated diesel cargo, to unlawfully keep for itself any money that could be obtained from the sale of Pemex-Refining's property and to avoid the Mexican legal system. In short, Respect has engaged in the most egregious form of international forum shopping.  By taking both its vessel and Pemex-Refining's property out of Mexico and into the United States, Respect left Pemex-Refining with little choice but to appear in the courts of the United States or potentially lose its property and claims against Respect forever.

As evidenced by the undisputed facts, Mexico has a substantial interest in the outcome of this dispute.  Not only were the contracts entered into and tortious acts committed in Mexico, but this dispute also involves Mexican government property, a Mexican government entity and the application of Mexican law.  Additionally, most of the evidence and witnesses are

- 8 -

1   located in Mexico and most of the documents involved are in

2   Spanish. The only nexus between this dispute and the United

3   States is the fact that the M/V RESPECT was arrested in the

4   United States after fleeing Mexico. On balance, the interests of

5   Mexico far exceed any interest the United States may have in

6   deciding this case. Mexico respectfully submits that had the

7   tables been turned and had this been United States government

8   property that had been stolen and taken to Mexico, the United

9   States government would insist that the matter be resolved in its

10  own courts rather than in the courts of Mexico. Mexico simply

11  asks for equal dignity in this regard.

12

13                  IV.   CONCLUSION

14          For the foregoing reasons, the United Mexican States

15  urge this Court to reject Respect's appeal and to affirm the

16  decision of U.S. District Court Judge James Ideman dismissing

17  this lawsuit in its entirety based upon a lack of jurisdiction

18  and ordering the immediate return of the proceeds from the sale

19  of Pemex-Refining's property.

20

21  Dated:  March 5, 1996

22                              AMB. MIGUEL ANGEL GONZALZ FELIX.
                                LEGAL ADVISOR OF THE SECRETARIAT OF
                                FOREIGN RELATIONS OF MEXICO
23                              UNITED MEXICAN STATES

24

25

26

27

28

                                    9

## CERTIFICATION UNDER RULE 32(e)(3)

Pursuant to Ninth Circuit Rule 32(e)(3), the Amicus Brief is monospaced, having 10.5 or fewer characters per inch, does not exceed 40 pages and contains fewer than 7200 words.

10

## PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is Keesal, Young & Logan, 400 Oceangate, Long Beach, California 90801.

      On March 7, 1996, I served the foregoing document described as **MOTION FOR LEAVE TO FILE BRIEF OF AMICUS CURIAE; BRIEF OF AMICUS CURIAE OF THE UNITED MEXICAN STATES BY THE LEGAL ADVISOR OF THE SECRETARIAT OF FOREIGN RELATIONS OF MEXICO** on the parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

David E.R. Woolley, Esq.
WILLIAMS WOOLLEY COGSWELL
  NAKAZAWA & RUSSELL
111 W. Ocean Boulevard,
Suite 2000
Long Beach, CA 90802-4614
(two copies)
(via hand-delivery)

The Honorable James M.
Ideman
United States District Court
312 N. Spring St.
Los Angeles, CA 90012
(one copy)
(via U.S. Mail)

      I deposited such envelope(s) in the mail at Long Beach, California.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after deposit for mailing in this declaration.

      Executed on the 7th day of March 1996, at Long Beach, California.

      Pursuant to California Rules of Court, Rule 201, I certify that all originals and service copies (including exhibits) of the papers referred to herein were produced and reproduced on paper purchased as recycled, as defined by Section 42202 of the Public Resources Code.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Martha Michel

(MEM\FORM\292374)

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SUBMERSIBLE SYSTEMS, INC.           *        CIVIL ACTION
                                                *
versus                             *        NO. : 1:98CV251GR
                                                *
PERFORADORA CENTRAL, S.A. de C.V.  *        WALTER J. GEX, III
                                                *
                                                *        MAGISTRATE JUDGE
                                                *        JOHN M. ROPER

CONSOLIDATED WITH

WELCH SALES & SERVICE, INC.        *
                                           *
versus                             *
                                           *
PERFORADORA CENTRAL, S.A. de C.V.  *
and SUBMERSIBLE SYSTEMS, INC.      *
* * * * * * * * * * * * * * * * * *

RESPONSE OF PERFORADORA CENTRAL, S.A. de C.V. TO
INTERROGATORY NO. 12 PROPOUNDED BY SUBMERSIBLE SYSTEMS, INC.

Defendant, Perforadora Central, S.A. de C.V. ("Perforadora Central"), in conformity with

the Order issued by Magistrate Judge Roper on April 12, 1999, responds to Interrogatory 12

propounded by Submersible Systems, Inc., as follows:

Interrogatory No. 12:

Please identify each asset of Perforadora Central, whether movable or immovable currently
located in the United States. In your response, please identify with particularity, a description of the
asset, the state and city in which the asset is located, the street address of the location, the value of
the asset and whether such asset will likely remain in the United States during 1999.

**ANSWER TO INTERROGATORY NO. 12:**

Perforadora Central, S.A. de C.V. is currently having a LeTourneau design, super 116C jack-

up drilling rig constructed at the Halter Marine Shipyard, 51101 Washington Avenue, Pascagoula



EXHIBIT
P-81

EXHIBIT
C

Mississippi 39553. The drilling rig has a hull length of 243 feet; hull width of 206 feet; can drill in water depths of 350 feet; and can drill to depths of 20 to 25,000 feet. The estimated contract cost of this asset, including owner furnished equipment, construction period financing costs, engineering costs and construction supervisory costs, was approximately $94,000,000.00. Current value of the drilling rig when complete is unknown; because of the precipitate decline in worldwide demand for drilling rigs over the last 18 months, and the disastrous fall in daily rates for drilling rigs, the current market value of the rig is probably less than the outstanding mortgage of approximately $70,500,000.00, although no current appraisal has been obtained. The rig is contracted for use in Mexican waters and will likely depart the United States during 1999.

The Blow Out Preventer (BOP) Stack for the drilling rig under construction in Pascagoula, Miss., has not yet been delivered to the Shipyard. The BOP stack is located at Cameron Ironworks, 6 Holloway Blvd., Ville Platte, Louisiana 70586. The approximate cost of these components is $952,000.00 (which is included within the total stated above). Perforadora Central has not yet made payment on the BOP components. They will leave the United States with the rig.

Perforadora Central, S.A. de C.V. has two inland posted drilling barges currently chartered to Falcon Drilling Co.. Falcon currently has both barges tied up at Broussard Brothers facility, 105 Trivolie St., Abbeville, Louisiana 70510. Barge No. 4 has a gross tonnage of 2,227 lbs.; was built in 1982; and can drill in 20 feet of water to a depth of 25,000 feet. Barge No. 5 has a gross tonnage of 2,114 lbs.; was built in 1980; and can drill in 20 feet of water to a depth of 30,000 feet. Barges Nos. 4 and 5 have an estimated declared value of $10,000,000.00 each for insurance purposes. Whether both of these barges will or will not remain in the United States during 1999 is currently unknown, and is entirely up to the discretion of Falcon Drilling Co., the charterer. Because of the

2

fall in demand for drilling rigs and the dramatic decrease in day rates, these rigs are probably worth

less than the declared insurance value of $10,000,000.00. No current appraisals of these rigs has

been received or contracted for.

Perforadora Central has no other assets currently located in the United States.

Respectfully submitted,

MILLING BENSON WOODWARD L.L.P.

_Sergio J. Alarcon_

NEAL D. HOBSON (PHV #41995)(#6885)
BENJAMIN O. SCHUPP (PHV 1996)(#21074)
SERGIO J. ALARCON (PHV #41997)(#24740)
909 Poydras Street, Suite 2300
New Orleans, LA  70112-1010
Telephone:  (504) 569-7000
Facsimile:  (504) 569-7001

RAYMOND L. BROWN, ESQ. (# 4673)
Brown, Watt & Buchanan
3112 Canty Street
Pascagoula, MS 39569-2220
Telephone:  (228) 762-0035
Facsimile:  (228) 762-0299

Attorneys for Perforadora Central S.A. de C.V.

193715(#74449)

3

## CERTIFICATE OF SERVICE

I, Sergio J. Alarcon, do hereby certify that I have this day mailed by United States mail, postage prepaid, a true and correct copy of the above and foregoing Response of Perforadora Central, S.A. de C.V. to Interrogatory No. 12 to Submersible Systems, Inc., through its Attorneys, John C. Enochs, Esq., Michael H. Bagot, Jr., Esq. and Thomas A. Rayer, Jr., Esq., Wagner & Bagot, Poydras Center, Suite 2660, 650 Poydras Center, New Orleans, LA 70130-6105 and Mr. David W. Stewart, Bryant, Clark, Dukes, Blakeslee, Ramsay & Hammond PLLC, 2223 14th Street, Gulfport, MS 39501.

This 21st day of May, 1999.

193715(#74449)

4

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SUBMERSIBLE SYSTEMS, INC. | § | |
| | § | |
| VS | § | C.A. NO.  B-03-020 |
| | § | |
| PERFORADORA CENTRAL, S.A. de C.V. | § | RULE 9(h) ADMIRALTY |

**DECLARATION OF MICHAEL H. BAGOT, JR.**

Pursuant to 28 U.S.C. § 1746, I make the following declaration:

1.      I am counsel for Submersible Systems, Inc. in the captioned matter;

2.      The Fifth Circuit denied Submersible's Petition for Rehearing and Petition for Rehearing *En Banc* on June 28, 2001;

3.      On July 3, 2001, personnel from my office and I contacted a number of sources, including Lloyds Maritime Information Services and the Gulf of Mexico Newsletter regarding the location of the two posted inland barges that Perforadora had previously indicated were in Abbeville, Louisiana;

4.      Both Lloyds Maritime Information Services and the Gulf of Mexico Newsletter are information sources which regularly track vessels, including vessels used in the oilfield industry;

1

EXHIBIT

D

5.    On July 3, 2001, my office obtained information from the Gulf of Mexico Newsletter that Perforadora's posted inland Barges 4 and 5 were "stacked" in Mexico;

6.    Since then, I have not become aware that any Perforadora property was located in the State of Louisiana;

7.    The Amicus Brief attached as Exhibit "B" to Submersible's Response was retrieved at my request from the record in the *M/T RESPECT* case: the cover page is missing because it was entirely black when copied; and

8.    I declare under penalty of perjury that the foregoing is true and correct. Executed on June 21, 2003, at New Orleans, Louisiana.

MICHAEL H. BAGOT, JR.

718-01/60151

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SUBMERSIBLE SYSTEMS, INC. | § | |
| | § | |
| VS | § | C.A. NO. B-03-020 |
| | § | |
| PERFORADORA CENTRAL, S.A. de C.V. | § | RULE 9(h) ADMIRALTY |

DECLARATION OF WOLFGANG BURNSIDE

Pursuant to 28 U.S.C. § 1746, I make the following declaration:

1.    I am president of Submersible Systems, Inc. ("Submersible"), plaintiff herein;

2.    Submersible's first job in Mexico was the work it performed for Quantum Ingenieros, S.A. de C.V.; and

3.    Submersible's commercial activities in Mexico ceased after Perforadora seized its equipment;

4.    Submersible does not currently engage in work in Mexico;

5.    Submersible does not currently transport people and property to Mexico;

6.    Submersible does not currently interact with Mexican companies and Mexican citizens in Mexico;

7.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 20, 2003, at Patterson, Louisiana.

_____
WOLFGANG BURNSIDE

718-07/60150

1

EXHIBIT

E

```
1                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF MISSISSIPPI
2                         SOUTHERN DIVISION

3
     SUBMERSIBLE SYSTEMS, INC.        *
4             PLAINTIFF               *
     VS.                              *         CIVIL ACTION
5                                     *         NO. 1:98cv251RG
     PERFORADORA CENTRAL, S.A.        *
6    de C.V.                          *            BILOXI, MS
              DEFENDANT               *         JUNE 14-17, 1999
7                                     *
                                      *
8    *  *  *  *  *  *  *  *  *  *  *  *  *  *

9

10

11

12              COURT REPORTER'S TRANSCRIPT OF
                          TRIAL
13                        before
             THE HONORABLE WALTER J. GEX, III
14           UNITED STATES DISTRICT COURT JUDGE

15

16                   VOLUME II of III
17

18

19
     APPEARANCES:
20
          FOR THE PLAINTIFF:
21              MICHAEL H. BAGOT, JR. ESQ.
                THOMAS A. RAYER, JR. ESQ.
22              POYDRAS CENTER, SUITE 2660
                650 POYDRAS STREET
23              NEW ORLEANS, LA 70130-6105

24              DAVID W. STEWART, ESQ.
                2223 14th STREET
25              GULFPORT, MS 39502
```

EXHIBIT
F

368

1    A    You asked the question here?

2    Q    Starting at Line 15.

3    A    Yes, I called his home just to say hello to him.

4    Q    And that's-- what is correct?  Did you call him just

5    to say hello?

6    A    Sir, when I called, he wasn't there.  He was not the

7    one to answer the phone.  So it was somebody else so I

8    just-- I don't see any reason to say that to anybody else,

9    you know, I was just-- I just-- that's what I said, I just

10   wanted to say hello.

11   Q    You don't deny that the Submersible equipment was

12   padlocked on board the Don Francisco on June 23rd, do you?

13   A    I don't know about that.

14   Q    You don't know way or other?

15   A    No, I don't.

16   Q    In the past when you shut down vessels like the Don

17   Francisco for nonpayment, equipment is sometimes then

18   padlocked on the deck; is that correct?

19   A    We did that once or twice at the request of Quantum

20   during the November-- I mean the year of 1997, during the

21   contract knowing that particular date you are-- mentioned.

22   Q    Now, Oscar Olivera did tell you at some point after

23   June 23rd, 1997, that Submersible was losing contracts; is

24   that correct?

25   A    I don't think-- I-- he did not.

CHRIS SCHMITT, RPR, CSR

369

1   Q     Look at Page 200 of your deposition, please, starting

2   at Line 16.

3   A     What page, please?

4   Q     Page 200.  The question is:  "Did Mr. Burnside tell

5   you that his inability to get his equipment was causing him

6   to cancel contracts or that he was losing business as a

7   result of that?"  And your answer was:  "He maybe did but

8   not in person.  I think I heard that from Mr. Oscar

9   Olivera."  Question was:  "When did Mr. Olivera tell you

10  that?"  The answer:  "By the end of 1996, somewhere around

11  there, October-- November or something."  Question:  "You

12  mean prior to the end of 1997?"  Answer:  "Yes, sir."

13  Question:  "So October or November of 1997?"  Answer:

14  "Yes."  Question:  "Did Mr. Olivera mention this to you on

15  more than one occasion"?  Answer:  "I think, yes."  Is that

16  correct testimony?

17  A     Yes, sir.  In 1997 at the end.

18            MR. BAGOT:   I have no further questions, Your

19  Honor.

20            THE COURT:  All right.

21            MR. BROWN:   We'll reserve questions of this

22  witness, Your Honor.

23            THE COURT:  All right, you can step down. Thank

24  you.

25            (Whereupon, the witness is excused.)

CHRIS SCHMITT, RPR, CSR